FILED

2017 MAY -8 PM 12: 28

U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF TN

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE

In re:

JUAN ELIACIM MARTINEZ,

Debtor.

_____/

CASE NO. 3:17-00752-MFH
CHAPTER 7
JUDGE MARIAN F. HARRISON

---

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS: 5/26/17**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: Tuesday, 6/13/17 at**
**9:00 a.m. in Courtroom 3 at 701 Broadway, Room 170, Nashville, TN 37203.**

---

### NOTICE OF CREDITOR'S MOTION TO DISMISS BANKRUPTCY CASE
### AS BAD FAITH FILING

Bradley Legal Group, P.A. (the "**Creditor**"), has asked the court to dismiss bankruptcy

case as bad faith filing.

**YOUR RIGHTS MAY BE AFFECTED.** If you do not want the court to grant the

attached motion by entering the attached order, or if you want the court to consider your views

on the motion, then on or before the response date stated above, you or your attorney must:

1.    File with the court your response or objection explaining your position. Please note: the
      Bankruptcy Court for the Middle District of Tennessee requires electronic filing.
      Any response or objection you wish to file must be submitted electronically. To file
      electronically, you or your attorney must go to the court website and follow the
      instructions at: <https://ecf.tnmb.uscourts.gov>.

      If you need assistance with Electronic Filing you may call the Bankruptcy Court at
      (615) 736- 5584. You may also visit the Bankruptcy Court in person at: 701
      Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 A.M. - 4:00 P.M.).

2.    Your response must state the deadline for filing responses, the date of the scheduled
      hearing and the motion to which you are responding.

      If a response is filed before the deadline stated above, the hearing will be held at the time

and place indicated above. **THERE WILL BE NO FURTHER NOTICE OF THE**

1

**HEARING DATE.** You may check whether a timely response has been filed by viewing the case on the court's website at <https://ecf.tnmb.uscourts.gov>.

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter the attached order granting that relief.

Date: May 5, 2017.

**BRADLEY LEGAL GROUP, P.A.**
*Creditor*
15 Northeast 13th Avenue
Fort Lauderdale, FL 33301
Tel: (954) 523-6160
Fax: (954) 523-6190

By: _____

John F. Bradley, Esq.
Fla. Bar No. 0779910
jb@bradlegal.com

## CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE I hereby certify that on the 5th day of May, 2017, I mailed and/or e-mailed a copy of the foregoing to the following:

Jon Daniel Long, Esq.
*Counsel for Debtor*
Long, Burnett, & Johnson, PLLC
302 42nd Ave. No.
Nashville, TN 37209
Email: ecfmail@tennesseebankruptcy.com

Michael Gigandet
*Trustee*
Law Office of Michael Gigandet
208 Centre Street
Pleasant View, TN 37146
Email: michael@mgigandet.com

U.S. Trustee
*U.S. Trustee*
Office of The United States Trustee
701 Broadway, Suite 318
Nashville, TN 37203-3966

By: _____

John F. Bradley, Esq.

3

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE

In re:

CASE NO. 3:17-00752-MFH
CHAPTER 7
JUDGE MARIAN F. HARRISON

JUAN ELIACIM MARTINEZ,

Debtor.

_____/

## CREDITOR'S MOTION TO DISMISS BANKRUPTCY CASE AS BAD FAITH FILING

Unsecured creditor, Bradley Legal Group, P.A. (the "**Creditor**"), pursuant to Fed. R. Bankr. P. 1017(e) and 11 U.S.C. §§ 105 and 707(a), requests the Court enter an order dismissing this bankruptcy case as a bad faith filing, and in support thereof states:

1.      This case was commenced by the filing of a Voluntary Petition for Individuals Filing for Bankruptcy (the "**Petition**") under Chapter 7 on February 5, 2017 (the "**Petition Date**") by JUAN ELIACIM MARTINEZ (the "**Debtor**").

2.      The Creditor is the victim of scheme perpetrated by the Debtor, which was only exacerbated by this bankruptcy filing.

3.      This bankruptcy filing and the Debtor's pre-petition fraudulent actions reek of bad faith, and as a result, this bankruptcy case should be dismissed for "cause", pursuant to 11 U.S.C. § 707.

### Factual Background

4.      Between 2010 and 2012, Debtor requested that Creditor perform legal services on his behalf.

5.      Creditor agreed and, in fact, performed legal services for Debtor, in the nature of legal services, including, but not limited to, contract drafting and negotiations related to the entertainment industry, as well as personal matters, immigration matters, and more.

1

6. In return, Debtor agreed to pay Creditor the reasonable value of services.

7. As part of the services performed for Debtor, Creditor negotiated a music publishing contract (the "**Agreement**") with the other creditor listed on the Petition, Sony Music, with a significant advance payment to Debtor which was paid through Creditor's law firm. *See Exhibit "A"* hereto. Debtor agreed to pay Creditor from the advance proceeds. However, when the proceeds arrived, Debtor fraudulently claimed that he would pay Creditor from other sources, and required all of the publishing advance proceeds be paid to him. Debtor then failed and refused to pay creditor following his fraudulent receipt of all of the publishing proceeds.

8. Debtor has failed to pay Creditor for the services rendered to him at his request. Furthermore, Debtor has began to conceal his whereabouts.

9. As a result, on November 5, 2014, Creditor initiated a collection lawsuit against Debtor (the "Collection Lawsuit") by filing a Complaint (the "**Complaint**") for *quantum meruit* and unjust enrichment in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, styled Bradley Legal Group, P.A. v. Juan Eliacim Martinez, Case No. CACE 14-021042.

10. Although Debtor concealed his whereabouts, on November 14, 2014, Debtor was personally served with the Complaint during his public appearance at the Miami Beach Convention Center.

11. On December 5, 2014, Debtor electronically filed with the court an untimely and unsigned motion for extension of time, which failed to disclose his mailing address or any valid contact information, and which requested additional thirty days to respond to the Complaint.

12. After the requested thirty days have passed during which Debtor failed to respond to the Complaint, on January 6, 2015, Creditor filed with the court a motion for entry of default

2

and set same for hearing, during which the court granted Creditor's motion and entered a default against Debtor on January 15, 2015.

13.     Upon Creditor's verified motion for entry of default final judgment, hearing thereon, and proper notice to Debtor as to both despite of the default, the court entered a Default Final Judgment in favor of Creditor and against Debtor for a total amount of $25,213.05 dated January 27, 2015 (the "**Judgment**"). *See Exhibit "B"* hereto.

14.     On February 18, 2015, a Writ of Execution was issued by the court.

15.     On August 12, 2016, Creditor filed and served on Debtor a motion to compel Debtor to complete Fla. R. Civ. P. Form 1.977 (Fact Information Sheet), first set of interrogatories in aid of execution, and request to produce in aid of execution.

16.     On November 17, 2016, Creditor filed and served on Debtor an *ex parte* motion to compel discovery responses, which the court granted on November 18, 2016, ordering that Debtor fully and adequately respond to the discovery requests within ten (10) days therefrom.

17.     Debtor had attempted to avoid or evade the payment of the Judgment and has continuously concealed his whereabouts.

18.     For that reason, on December 6, 2016, Creditor filed and served on Debtor a motion for proceedings supplementary pursuant to Fla. R. Civ. P. 1.570(a) and Fla. Stat. § 56.29, which sought an order in order to seize certain intellectual property, namely registered and unregistered copyrights, along with the inventory and goodwill associated therewith, authored by Debtor (the "**Works**").

19.     Simultaneously therewith, Creditor filed and served on Debtor a motion for sanctions for Debtor's complete failure to respond to the discovery requests as ordered by the court. Creditor noticed Debtor of both motions, including the scheduled hearings thereon.

3

20.    On January 9, 2017, the court entered an Order and Notice to Appear (the "**Order**"), which:

  a.  granted Creditor's motion for proceedings supplementary;

  b.  entitled Creditor to an order compelling a transfer of the ownership of the Works by operation of law;

  c.  ordered Debtor and third party publishing companies to file by January 24, 2017 affidavits stating why the Works could not be applied to satisfy the unsatisfied Judgment;

  d.   ordered Debtor to appear before the court on February 6, 2017 to be examined concerning his assets;

  e.  entitled Creditor to its costs for the proceedings supplementary, including other reasonable and just incidental costs and attorneys' fees.

*See **Exhibit "C"** hereto.*

21.    The Works listed in the Order were as follows:

  a.  U.S. Copyright Registration No. PA0001831397 dated March 7, 2013 for the music work titled "Desde Que Se Fue" ("Copyright Registration"); and
  b.  Copyrights which appear to be unregistered ("Unregistered Copyrights"):
      i.  Album: EliaCiM (released on August 19, 2016):
          1.  Mi Pecado Favorito
          2.  Fingiendo Sonrisas
          3.  Cancioncita Cursi De Amor
          4.  Un Dia De Esos
          5.  Contradiccion
          6.  El Espacio
          7.  Quiero
          8.  ParaPaPaPa!
          9.  Luces
          10. Te Quiero Lejos De Aqui
          11. Millas
          12. La Bella
      ii.  Single: Se Le Acabaron Las Flechas A Cupido
      iii. Single: Quiero (Version Bachata) (released on October 21, 2016)

4

22.     On January 10, 2017, the court granted Creditor's motion for sanctions, and ordered Debtor to pay Creditor's reasonable expenses caused by his failure, including attorneys' fees. *See **Exhibit "D"*** hereto.

23.     On February 2, 2017, Creditor filed and served on Debtor a notice of Debtor's non-compliance with the Order, which was the first deadline imposed on Debtor by the Order.

24.     As mentioned above, the Order required the Debtor to appear before the court on February 6, 2017 to be examined concerning his assets. *Exhibit "C"* hereto.

25.     Instead, on February 5, 2017, only one (1) day before the ordered appearance, Debtor commenced this bankruptcy proceeding by filing the Petition, which lists only two (2) creditors:

> a.  Sony Music, allegedly a creditor secured by Debtor's Works; and
>
> b.  The Creditor as an unsecured creditor.

26.     Sony Music, who Debtor falsely alleged to be a secured creditor, because the "artist contract [with] lien on royalties" (the Contract herein) does not constitute a secured interest on Debtor's share of the intellectual property. Specifically, Debtor alleged the amount of claim of $27,500, with a value of collateral that supports this claim of $8,305, and the unsecured portion of $19,195.

27.     However, Sony Music does not have a security interest in the copyrights, as it has only an administrative right to collect the royalties and pay Debtor the income. As mentioned above, Creditor negotiated the subject Contract (*Exhibit "A"*) with Sony Music on Debtor's behalf.

28.     Moreover, the Petition at p. 12 listed as Debtor's "patents, copyrights, trademarks, trade secrets, and other intellectual property" on Schedule A/B at §26 only the Works listed in

5

the Order and one additional title, "Un Nuevo sol." Debtor also listed same for the property securing Sony Music's claim, for executor contracts and unexpired leases, and for settlement of intention for individuals (with the intent being to retain the property and enter into a reaffirmation agreement).

29.     However, Debtor failed to include Debtor's other intellectual property known to the Creditor to be owned by the Debtor, and/or created after the Works disclosed in the Petition. *See Exhibit "E"* hereto.

30.     Similarly, Debtor failed to disclose his ownership of many musical instruments known to the Creditor to be owned by the Debtor, who claims to be a "musician/songwriter," that are not held primarily for Debtor's personal, family, or household use.

31.     Also, Debtor failed to disclose any income other than his non-filing spouse's, including any royalty income or any other income earned from his employment as a musician/songwriter, and/or derived from his performances, music, the Contract, or any of the works listed in *Exhibit "E"* hereto. For that reason, the Debtor's claim that his own income amounts to $0 is false.

32.     On the other hand, Debtor claimed monthly expenses in excess of the only income claimed, of his non-filing spouse's. However just as the falsely claimed $0 income of his own, there are various contradictions that clearly indicate that the expenses and/or assets claimed are false as well. For example:

   a.   Debtor did not claim to own a mobile phone or television, although he also claimed a monthly expense of $200 for telephone, cell phone, Internet, satellite, and cable services. The only electronics he claims to own are two computers worth $100 each. At the same time, the latest music video posted on his Facebook page (https://www.facebook.com/eliacimmartinez) on February 15, 2017 shows the Debtor using his smart phone in a recording studio. *See Exhibit "F"* hereto;

   b.   Debtor claimed that he does not own, lease, or have legal or equitable interest in

6

any vehicles, although he also claimed a monthly expense of $324 as installment or lease payment for Vehicle 1, $122 for vehicle insurance, and $225 for transportation, including gas, maintenance, bus or train fare;

c.  Debtor claimed he does not own a microwave, a refrigerator, or a stove, yet claimed to have a kitchen with dishes and cookware; and

d.  Debtor claimed to own no watch or jewelry, although his music video and other pictures posted on his Facebook page indicate to the contrary. See *Exhibit "G"* hereto.

33.     As a result, Debtor claimed that after any exempt property is excluded and administrative expenses are paid that funds will not be available to distribute to the Creditor.

34.     Debtor's Statement of Financial Affairs (Form 107), which accompanied the Petition, in Part 4, Question 9, listed the Collection Lawsuit. However, Debtor falsely claimed therein that the Collection Lawsuit is "pending," while in fact it has concluded when the Judgment was entered, and has been re-opened only as to the post-judgment proceedings in aid of execution, during which Debtor continuously violated and/or ignored the court's every order, and filed the Petition at the eleventh hour instead of appearing before the court as ordered.

35.     Moreover, Debtor claimed that Creditor's claim was *not* unliquidated. However, pursuant to the Order attached as Exhibit "C" hereto as well as the order attached as Exhibit "D" hereto, Debtor was also ordered to pay Creditor's reasonable attorneys' fees and costs, which are yet to be determined and ordered by the court.

36.     Debtor's bankruptcy counsel of record advised the Creditor of the filed Petition via e-mail on February 5, 2017, at 3:34 p.m., less than one-and-a-half working hours before the ordered appearance scheduled for 8:30 a.m. the following morning. *See Exhibit "H"* hereto.

37.     Responsive thereto, Creditor requested that the Debtor file his suggestion of bankruptcy in the Collection Lawsuit (*Exhibit "H"*), which to-date Debtor has failed to do.

## Memorandum of Law

7

## A. **This Case Was Filed in Bad Faith and Should be Dismissed Pursuant to 11 U.S.C. § 707(a)**

38.     Pursuant to Fed. R. Bankr. P. 1017(e), Debtor's Chapter 7 case may be dismissed for abuse only on motion and after a hearing on notice to the debtor, the trustee, the United States trustee, and any other entity as the court directs. Fed. R. Bankr. P. 1017(f)(1) states that Rule 9014 governs a proceeding to dismiss or suspend a case.

39.     11 U.S.C. § 707 provides that a Chapter 7 case can be dismissed only after notice and a hearing only for "cause."

40.     This Court must decide whether "cause" exists to dismiss the Debtor's bankruptcy case pursuant to 11 U.S.C. § 707(a). Creditor must meet his burden of proof under § 707(a) to dismiss this chapter 7 case.  A motion to dismiss under § 707(a) "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011).

41.     Under § 707(a), a chapter 7 case may be dismissed for "cause." Although the Bankruptcy Code does not define the term "cause," § 707(a) lists three nonexclusive illustrations of cause[1]: (1) unreasonable delay by the debtor that is prejudicial to creditors, (2) nonpayment of required fees or charges, and (3) only on motion of the United States Trustee, failure of the debtor to file a list of creditors, schedules, and a statement of financial affairs as required under § 521(a). 11 U.S.C. § 707(a)(1)-(3).  The burden to prove cause rests with Creditor, as the moving party. *In re Aiello*, 428 B.R. 296, 299 (Bankr.E.D.N.Y. 2010). However, the Third Circuit in *In re*

---

[1] Section 707(a) provides that the court may dismiss a chapter 7 cases "for cause, including . . . ." The introductory word "including" means that the three enumerated types of cause are nonexclusive. *See* § 102(3) ("'includes' and 'including' are not limiting"); *Smith v. Geltzer* (*In re Smith*), 507 F.3d 64, 72 (2d Cir. 2007) ("[T]he three examples given in section 707(a) are illustrative, not exclusive."). *See also* H.R. Rep. No. 95–595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6336; S. Rep. No. 95–989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5880 (These causes are not exhaustive, but merely illustrative.").

8

*Tamecki*, 229 F.3d 205 (3d Cir. 2000) employed a burden shifting analysis – once the moving party questions a debtor's good faith in filing for chapter 7 relief, the burden shifts to the debtor to prove that the case was commenced in good faith.

42.     The determination of what constitutes "cause" to dismiss an individual debtor's chapter 7 case is left to the discretion of the court. *See In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007) ("The determination of whether cause exists is committed to the sound discretion of the bankruptcy court") (quoting *In re Hull*, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006)); *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60, 67 (E.D.N.Y. 2012) ("A bankruptcy court has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause"); *In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) ("Courts have broad authority to determine what is cause for dismissal under section 707(a)"); 6 *Collier on Bankruptcy* § 707.03 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015) ("The court has substantial discretion in ruling on a motion to dismiss under section 707(a), and in exercising that discretion must consider any extenuating circumstances, as well as the interests of the various parties").

43.     The Sixth Circuit, along with several other circuits, has concluded that there is a good faith filing requirement. "[L]ack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court." *In re Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991). "[A]lthough the jurisdictional requirement of good faith is not explicitly stated in the statute, it is inherent in the purposes of bankruptcy relief." *In Re Jones,* 114 B.R. 917 (Bankr.N.D.Ohio 1990) (citing *Local Loan v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), among many other cases).

44.     This Court may base its decision on (1) the Debtor's manipulations which reduced the creditors in this case to one; (2) the Debtor's failure to make significant lifestyle adjustments

9

or efforts to repay; (3) the fact that the Petition was filed clearly in response to Creditor obtaining the Judgment and the subsequent orders, including the Order; and (4) the unfairness of the Debtor's use of Chapter 7 under the facts in this case. *In re Zick*, 931 F.2d at 1128 (citations omitted).

45. Here, the Debtor listed only two (2) creditors, Sony Music as an allegedly secured creditor, and the Creditor, as an unsecured creditor. No other claims, including for consumer debt, have been listed. Firstly, as explained above, Sony Music is not a secured creditor, as falsely alleged by Debtor. Secondly, Debtor claimed that his debts are primarily consumer debts. Pursuant to 11 U.S.C. § 101(8), consumer debts are "incurred by an individual primarily for a personal, family, or household purpose." "The profit motive analysis is used, and is clearly appropriate, to determine whether a debt falls outside the category of consumer debt." *In re Westberry*, 219 B.R. 976 (Bankr. M.D. Tenn. 1998). "The profit motive test determines that debt is not consumer debt if the debt was 'incurred with an eye toward profit.'" *Id.* (quoting *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988). Here, Debtor's debts are primarily non consumer debts as they were incurred with an eye toward profit. Debtor is a musician/songwriter, and the alleged debt with Sony Music relates to his for-profit musical work. Similarly, the subject debt with the Creditor also relates primarily to his for-profit musical work. Moreover, Debtor claims that the only secured debt is exempt under Tenn. Code Ann. § 26-2-103, which states:

> Personal property to the aggregate value of four thousand dollars ($4,000) debtor's equity interest shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee, and such person shall be entitled to this exemption without regard to the debtor's vocation or pursuit or to the ownership of the debtor's abode. Such person may select for exemption the items of the owned and possessed personal property, including money and funds on deposit with a bank or other financial institution, up to the aggregate value of four thousand dollars ($4,000) debtor's equity interest.

10

*Id.*. Moreover, Tenn. Code Ann. § 26-2-112 states that:

> ***The personal property exemptions as provided for in this part***, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate ***and the citizens of Tennessee***, pursuant to section 522 (b) (1), Public Law 95-598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522 (b) (1), ***are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 USC 522 (d)***.

*Id.* [emphasis added].

46.      The Debtor has made no efforts to repay, and there is no indication of any significant lifestyle adjustments as well as the Debtor claims not to expect an increase or decrease within the year after the Petition was filed.

47.      Debtor filed the Petition one (1) day before he was ordered to appear regarding his assets in the Collection Lawsuit, in an attempt to circumvent the Judgment, the Order, and the court's directives. To the extent that the Debtor has failed to obey the lawful orders of the court in the Collection Litigation within one year before the date of the Petition, the discharge is also prohibited under 11 U.S.C. § 727 (a)(7).

48.      Debtor's use of Chapter 7 under all facts of this case is clearly unfair. Moreover, Debtor has been dishonest not only with the Creditor, but also in his Petition, as detailed herein, by making knowingly and fraudulently, in connection with this case, a false oath or account, by presenting or using a false claim, by withholding information relating to his property or financial affairs. Therefore, this Court may not grant the Debtor a discharge, as it is also prohibited by 11 U.S.C. § 727(a)(4).

49.      Also, the Petition reveals that the Debtor is not needy, as for the only true debt he owes (to the Creditor) he has had the means to repay, yet blatantly refused to. It is abundantly clear that it has been his intention from the beginning to deceive and defraud the Creditor, and

11

that the debt for the services he had obtained from the Creditor by false pretenses, false misrepresentations, and/or actual fraud described above. For that reason, the debt is also exempted from discharge pursuant to 11 U.S.C. § 523(a)(2).

50.     The Sixth Circuit has concluded that the following language from *In re Krohn,* 886 F.2d 123 (6th Cir. 1989), *aff'g* 87 B.R. 926 (Bankr.N.D.Ohio 1988), while dealing with § 707(b) of the Code, is instructive also as to § 707(a):

> Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non needy debtor.
>
> . . . .
>
> The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide for an equitable distribution to creditors. The debtor herein, although he has minimal assets, appears to be seeking a "head start" with no attempt to deal with creditors on an equitable basis.

886 F.2d at 126, 127-28.

51.     Dismissal based on lack of good faith must be undertaken on an *ad hoc* basis. *In re Brown,* 88 B.R. 280, 284 (Bankr.D.Hawaii 1988); *In re Zick*, 931 F.2d at 1129 ("It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.")

52.     Courts can consider a debtor's pre-petition activity in determining whether there is an absence of good faith for 11 U.S.C. § 707 purposes. *In re Love*, 957 F. 2d 1350 (7th Cir. 1992).

53.     Even without reviewing the Debtor's bankruptcy schedules and statements, it is clear that the Debtor lacked good faith in commencing this bankruptcy proceeding. The Debtor's

12

motivations and sincerity in seeking relief under Chapter 7 are clearly suspect, if not overtly fraudulent, as are his degree of effort (unless one counts his effort in orchestrating the fraudulent scheme to defraud the Creditor) and bona fides in dealing with his Creditor and the court prior to the Petition Date.

54.     Based on the Debtor's fraud, the debt owing to the Creditor would be non-dischargeable in a Chapter 7 proceeding. Furthermore, the timing of the Petition and the circumstances surrounding how the debt further evidence the Debtor's lack of good faith. This bankruptcy case was clearly filed in an effort to defeat execution on the Judgment issued in the state court Collection Litigation and compliance with the subsequent orders, and egregious behavior is present.

55.     The Debtor's conduct seems instead part and parcel of an attempt to manipulate and abuse the bankruptcy process.

> The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors. Good faith and candor are necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start.

*In re Zick*, 931 F.2d at 1129-30 (quoting *In Re Jones,* 114 B.R. at 926).

56.     For the reasons stated above, the case should be dismissed.

WHEREFORE, the Creditor requests that the Court enter an order dismissing this Chapter 7 proceeding with prejudice, and for such other and further relief as the Court deems just and proper.

13

**BRADLEY LEGAL GROUP, P.A.**
*Creditor*
15 Northeast 13th Avenue
Fort Lauderdale, FL 33301
Tel: (954) 523-6160
Fax: (954) 523-6190


By: _____
John F. Bradley, Esq.
Fla. Bar No. 0779910
jb@bradlegal.com

## CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE I hereby certify that on the 5th day of May, 2017, I mailed and/or e-mailed a copy of the foregoing to the following:

Jon Daniel Long, Esq.
*Counsel for Debtor*
Long, Burnett, & Johnson, PLLC
302 42nd Ave. No.
Nashville, TN 37209
Email: ecfmail@tennesseebankruptcy.com

Michael Gigandet
*Trustee*
Law Office of Michael Gigandet
208 Centre Street
Pleasant View, TN 37146
Email: michael@mgigandet.com

U.S. Trustee
*U.S. Trustee*
Office of The United States Trustee
701 Broadway, Suite 318
Nashville, TN 37203-3966


By: _____
John F. Bradley, Esq.

14

# EXHIBIT "A"

AGREEMENT made as of December 15, 2011 between JUAN ELIACIM MARTINEZ PIMENTAL, individually and d/b/a _____ (BMI) c/o John F. Bradley, Bradley Legal Group, P.A., 15 NE 13th Avenue, Ft. Lauderdale, Florida 33301 (hereinafter "you"), and SONY/ATV LATIN MUSIC PUBLISHING LLC, 1111 Lincoln Boulevard, Suite 803, Miami Beach, Florida 33339 (hereinafter "Sony").

## 1.  SONGWRITING SERVICES/NEW MUSICAL COMPOSITIONS

1.01.  During the term of this agreement (the "Term"), you shall render your exclusive services to Sony to write new musical compositions (each such musical composition, to the full extent of your ownership, control or administration interest therein, a "New Composition").  You shall Deliver to Sony for exclusive exploitation hereunder all New Compositions you write during the Term, immediately after the creation thereof.  You are sometimes referred to herein as "Controlled Songwriter," and all references to "you and Controlled Songwriter" and the like shall be deemed to refer to you alone.

## 2.  MINIMUM DELIVERY COMMITMENT AND RELEASE COMMITMENT

2.01.  <u>Minimum Delivery Commitment</u>.  In each Contract Period you shall Deliver to Sony no less than ten (10) New Compositions (or the fractional equivalent of ten (10) New Compositions, as calculated pursuant to subparagraph 2.04(b) below; such number of New Compositions, the "Minimum Number").  At least one-half (1/2) of the New Compositions constituting your Minimum Delivery Commitment (rounded to the higher whole number) must be Delivered within the first six (6) months of the applicable Contract Period; and the balance not later than six (6) months thereafter.  You shall Deliver to Sony all New Compositions immediately after creation.  The requirements set forth in this paragraph 2.01 shall collectively be referred to hereinafter as the "Minimum Delivery Commitment," and sometimes the "MDC."

2.02.  In each Contract Period, you shall cause the Major Release on Phonograph Records of Albums of no less than two (2) New Compositions (or the fractional equivalent of two (2) New Compositions), as calculated pursuant to subparagraph 2.04(b) below; such number of New Compositions, the "Minimum Release Number" ("Release Commitment").  A New Composition shall not apply in reduction of the Release Commitment for the Contract Period concerned until Sony receives (a) written notice from the Record Company that released the Album embodying such New Composition(s) confirming (X) the titles of all New Compositions embodied thereon, and (Y) the U.S. mechanical royalty payable to Sony for each New Composition as embodied in such Album, (b) written notice accurately documenting the ownership interest of each songwriter and publisher, including you, in the applicable New Composition, and (c) an actual retail compact disc copy of such Album (inclusive of the album packaging and inserts) (collectively, the "Release Notice").

2.02.1. (a)  Notwithstanding anything to the contrary in this agreement, if at any time during the Term at least Four Thousand Dollars ($4,000) (the "Earnings Threshold") is applied to your account in connection with the exploitation of a New Composition that is one hundred

1

11/15/11                                                                    PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

percent (100%) owned or controlled by you, and such New Composition would not otherwise fulfill the MDRC, such New Composition shall be eligible to count towards fulfillment of the MDRC in accordance with the terms and conditions of this agreement for the Contract Period during which the Earnings Threshold is met. The New Compositions that qualify to fulfill the MDRC pursuant to this subparagraph 2.02.1(a) are sometimes referred to herein as "Alternately Qualifying New Compositions".

(b)     If you own or control less than one hundred percent (100%) of an "Alternately Qualifying New Composition", such New Composition shall be eligible to fulfill the MDRC in the same proportion as your control of the New Composition concerned; provided that the income applied to your account during the Contract Period concerned in respect of the exploitation of such New Composition equals the product of (X) Earnings Threshold, and (Y) your percentage ownership interest in the New Composition concerned (such amount, the "Adjusted Earnings Threshold). An Alternately Qualifying New Composition shall not reduce the MDRC in an amount greater than your ownership share of a particular New Composition even if earnings in respect of the Alternately Qualifying New Composition concerned exceed the Adjusted Earnings Threshold, and in no event shall any Composition count more than once in reduction of the MDRC.

2.03.   The Minimum Delivery Commitment and Release Commitment shall sometimes collectively be referred to hereinafter as the "MDRC."

2.04.   Only New Compositions satisfying all the following requirements shall apply in reduction of the Minimum Delivery Commitment:

(a)     The New Compositions are acceptable to Sony as satisfactory for commercial exploitation hereunder. (Any New Composition which has had a Major Release shall be deemed so acceptable). Sony shall advise you of any New Compositions Sony deems unsatisfactory, by notice to you within forty-five (45) days after the Delivery thereof. All New Compositions Delivered hereunder, whether or not accepted by Sony in reduction of the Minimum Delivery Commitment, shall be subject to Sony's rights under Article 6 below. A New Composition can only count once in reduction of the MDC.

(b)     The New Compositions are written solely by Controlled Songwriter or, if co-written, you have Delivered to Sony for exclusive exploitation hereunder Controlled Songwriter's fractional creative share in the New Composition concerned. Any New Composition with respect to which (i) Sony is granted less than fifty percent (50%) ownership interest, or (ii) less than exclusive financial administration of the entire New Composition concerned, or (iii) is not entitled to collect at least seventy-five percent (75%) of the then current minimum U.S. statutory rate for any reason whatsoever (e.g., you negotiated a lower rate or an aggregate "cap" on mechanical royalties payable by the Record Company), shall apply as a fraction of one (1) New Composition for all purposes under this agreement, and such fraction shall be equal to the product of:

2

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
                          Document      Page 20 of 83

        (1)     The lesser of:

        (i)     a fraction, the numerator of which is the percentage of the ownership interest in such composition granted to Sony hereunder and the denominator of which is fifty percent (50%); or

        (ii)     a fraction, the numerator of which is the percentage of the financial administration interest in such composition granted to Sony hereunder and the denominator of which is one hundred percent (100%).

        and

        (2)     a fraction, the numerator of which equals the per Album mechanical royalty collectible by Sony in respect of the New Composition concerned, and the denominator of which is seventy-five percent (75%) of the then current minimum U.S. statutory rate.

        (c)     The New Compositions are copyrightable.

        (d)     No one has been granted a license to use the Compositions on Phonograph Records in the United States at a royalty rate or on any other terms more favorable to the licensee than those applicable to compulsory licenses under the U.S. Copyright law.

        2.04.1.   Arrangements of musical compositions in the public domain shall not apply in fulfillment of your MDC unless ASCAP, BMI or SESAC (or another public performance society with which you are affiliated at the time of the initial Major Release of the Phonograph Record embodying the New Composition concerned) accords regular performance credit for such arrangement, in which case the New Composition concerned shall apply toward fulfillment of your MDC in the same ratio used by ASCAP, BMI or SESAC (or such other public performance society) in determining that performance credit, provided you have furnished Sony with satisfactory evidence of that ratio (e.g., if ASCAP or BMI or SESAC accords you with fifty percent (50%) regular performance credit for such arrangement, then one-half (1/2) of such New Composition shall apply in fulfillment of your MDC, subject to subparagraph 2.04(b) above).

        2.05.   ("Sampling," as used herein, refers to the use and reproduction of pre-existing musical material, hereinafter "Sampled Material," which is owned or controlled by any Person other than you or would not otherwise be subject to Sony's rights in respect of Compositions hereunder.)   Concurrently with your Delivery to Sony of a Composition, you shall notify Sony in writing of the names and addresses of all recording artists, record companies, songwriters and publishers and/or any other Persons who have any right, title or interest of any kind in any Sampled Material embodied in that Composition or in a recording embodying that Composition. You shall be solely responsible for obtaining all consents and licenses necessary or desirable in connection with the use and reproduction, and in connection with the licensing of the use and

3

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document     Page 21 of 83

reproduction, of any such Sampled Material, so that Sony shall enjoy the full and perpetual rights otherwise granted to Sony pursuant to Article 6 hereunder with respect to Compositions hereunder; at Sony's request, you shall supply Sony with fully-executed copies of any such consents, licenses and other related documentation. You shall be solely responsible for and shall account for and pay to any and all Persons who own or control Sampled Material any monies or other compensation to which such Persons are entitled as a result of any use hereunder by Sony of any Composition or recording embodying such Sampled Material. Notwithstanding anything to the contrary expressed or implied herein, no royalties, Advances or other monies shall be earned by or payable to you hereunder or otherwise in connection with any Composition embodying any Sampled Material or embodied on a recording embodying Sampled Material, and no Composition embodying Sampled Material or embodied on a recording embodying Sampled Material shall be deemed Delivered hereunder, unless and until you have obtained, on Sony's behalf, all rights required hereunder with respect to such Sampled Material, and, if Sony requests, until Sony receives documentation satisfactory to Sony with respect thereto.

### 3. OTHER MUSICAL COMPOSITIONS

3.01. Old Compositions. Each musical composition owned, controlled or administered by you or any Affiliate, in whole or in part, to the full extent of your (or such Affiliate's) ownership, control or administration interest therein, as of the date set forth on the first page hereof is an "Old Composition." You shall Deliver all Old Compositions to Sony prior to the execution hereof. You warrant and represent that all Old Compositions and your interest therein are listed on Schedule A attached hereto. Your failure to include or to accurately describe any Old Composition on Schedule A shall not diminish Sony's rights in and to such Old Composition.

3.02. Intentionally Omitted Without Implication.

3.03. As used in this agreement, the term "Compositions" shall refer to all New Compositions and Old Compositions.

### 4. TERM

4.01. The Term shall begin on the date set forth on the first page hereof and shall continue for an initial Contract Period (the "Initial Contract Period") ending on the date that is thirty (30) days after the later to occur of: (i) the date that is twelve (12) months after the commencement of this agreement; (ii) the date on which Sony receives the Release Notice accurately confirming fulfillment of the MDRC for the Initial Contract Period; or (iii) the date on which your account becomes recouped. In no event shall the Initial Contract Period continue for less than one (1) year. Notwithstanding the foregoing, if the Initial Contract Period has subsisted for at least one (1) year, and your account is recouped but you have not fulfilled the MDRC, the Initial Contract Period shall end on the last day of the semi-annual accounting period during which Sony receives your notice indicating that your account is recouped, as indicated on the most recent semi-annual accounting statement sent to you by Sony.

4

Case 3:17-bk-00752    Doc 13    Filed 05/08/17    Entered 05/08/17 13:41:56    Desc Main
Document      Page 22 of 83

4.02.  (a)  You hereby grant to Sony one (1) separate option (the "Contract Period Option") to extend the Term for one (1) additional Contract Period (the "Option Period") on the same terms and conditions applicable to the Initial Contract Period except as otherwise expressly provided in this agreement. (Such Option Period shall sometimes be referred to hereinafter as the "First Option Period".) Sony may exercise the Contract Period Option, if at all, by sending you a notice not later than the expiration date of the Initial Contract Period. If Sony exercises the First Option Period option, the First Option Period shall begin immediately after the end of the Initial Contract Period, and shall continue until the later of the date that is thirty (30) days following the date upon which Sony receives your Delivery Notice and Release Notice accurately confirming fulfillment of the MDRC for the Initial Contract Period, and the date Sony receives your notice accurately stating that you received a statement from Sony indicating that your account is recouped. In no event shall the First Option Period continue for less than one (1) year.

(b)  Notwithstanding anything to the contrary in subparagraph 4.02(a) above, if after the first eighteen (18) months of the First Option Period the MDRC for the First Option Period has been fulfilled, you shall have the right at any time after such eighteen (18) month period to pay Sony One Hundred Twenty-Five Percent (125%) of the unrecouped balance of your royalty account as reflected on the most recent accounting statement rendered to you by Sony, your royalty account hereunder shall be deemed recouped and the Term shall end on the last day of the semi-annual accounting period during which such payment is made.

4.03.  Notwithstanding anything to the contrary contained in this Article 4, if Sony has not exercised its option to extend the Term for a further Contract Period as of the date on which the then current Contract Period would otherwise expire, the following shall apply:

(a)  You shall send Sony notice (an "Option Warning") that its option has not yet been exercised.

(b)  Sony shall have the right to exercise the applicable Contract Period Option by sending a notice to you not later than the date fifteen (15) days after its receipt of the Option Warning (the "Extension Period").

(c)  The then current Contract Period shall end on either the last day of the Extension Period or the date of Sony's notice (the "Termination Notice") to you that Sony does not wish to exercise such option, whichever is sooner.

(d)  For the avoidance of doubt, nothing herein shall limit Sony's right to send a Termination Notice to you at any time, nor limit Sony's right to exercise a Contract Period Option in accordance with paragraph 4.02 above, notwithstanding any failure by you to send Sony an Option Warning in accordance with subparagraph 4.03(a) above.

5

## 5.    RETENTION PERIOD

5.01.    (a)    (i)    With respect to Compositions other than Unexploited Compositions (as such term is defined in subparagraph 5.01(b) below) (the "Exploited Compositions"), Sony shall retain all rights acquired by it under this agreement, throughout the Territory, until the date which is eight (8) years after the expiration of the Term, and then through the end of the then-current accounting period (the "Exploited Compositions Retention Period") (the last day of the then-current accounting period is hereinafter referred to as the "Calculation Date"); provided, however, that, if as of the Calculation Date your royalty account hereunder is in an unrecouped position, then the Exploited Compositions Retention Period shall continue until the date after the Calculation Date on which you receive a royalty accounting statement pursuant to Article 10 hereof indicating that your royalty account hereunder is then in a recouped position (taking into account all Advances paid hereunder), and then through the end of the then-current accounting period.

(ii)    Notwithstanding anything in this agreement to the contrary, with respect to all Exploited Compositions hereunder, promptly after the expiration of the Exploited Compositions Retention Period, Sony shall reassign to you in perpetuity and throughout the Territory all rights in the Exploited Compositions.

(b)    (i)    Notwithstanding anything to the contrary in subparagraph 5.01(a) above, with respect to Compositions which have not been Commercially Exploited (each such Composition an "Unexploited Composition"), Sony shall retain all rights acquired by it under this agreement, throughout the Territory, until the date which is three (3) years after the expiration of the Term and then through the end of the then-current accounting period (the "Unexploited Compositions Retention Period") (the last day of the then-current accounting period is referred to as the "Unexploited Compositions Calculation Date"); provided, however, that if as of the Unexploited Compositions Calculation Date your royalty account hereunder is in an unrecouped position, then the Unexploited Compositions Retention Period shall continue until the date after the Unexploited Compositions Calculation Date on which you receive a royalty accounting statement pursuant to Article 10 hereof indicating that your royalty account hereunder is then in a recouped position (taking into account all Advances paid hereunder), and then through the end of the then-current accounting period. For purposes of this subparagraph, a Composition shall have been "Commercially Exploited" if, prior to the Unexploited Compositions Calculation Date: (1) the Composition concerned has generated gross income of at least $4,000; (2) a license has been entered into for the exploitation of the Composition concerned; or (3) the Composition concerned has been placed "on hold" for recording by a recording artist and such recording artist has commenced recording the applicable Composition within six (6) months thereafter.

(ii)    Notwithstanding anything in this agreement to the contrary, with respect to all Unexploited Compositions hereunder, promptly after the expiration of the Unexploited Compositions Retention Period, Sony shall reassign to you in perpetuity and throughout the Territory all rights in the Unexploited Compositions.

6

(c)     The Exploited Compositions Retention Period and the Unexploited Compositions Retention Period are sometimes hereinafter referred to collectively as the "Retention Period".

5.02.    If at any time during the Term or thirty (30) days after the Term (the "Exclusive Period") you receive a bona fide offer from a third party to administer and/or co-publish any one or more Compositions hereunder after the Retention Period applicable to such Composition(s), in the Territory or any part thereof, you shall accord to First Negotiation Rights with respect to each and every such proposed publishing arrangement.

## 6.    GRANT OF RIGHTS

6.01.    Assignment of Copyrights.  You hereby sell, transfer and assign to Sony, and to Sony's successors and assigns, an undivided fifty (50%) percent of your entire right, title and interest in and to the Compositions, including without limitation, the copyrights therein and any and all renewals and/or extensions thereof throughout the Territory, in perpetuity and all claims and causes of action related to the Compositions accruing at any time and all other rights of whatsoever nature in the Compositions, including without limitation, the titles, words and music of the Compositions and each and every arrangement, adaptation and version thereof.  You shall execute and deliver to Sony such instruments of transfer and other documents regarding the rights of Sony in the Compositions as Sony may reasonably request to carry out the purposes of this agreement, (including, without limitation, the Exhibits and Schedules attached hereto), and Sony may sign such documents in your name or the name of any Controlled Songwriter and make appropriate disposition of them.  Notwithstanding the foregoing, but subject to the next two sentences, Sony shall give you ten (10) days' notice to sign any such document before signing any document in your name.  Sony may dispense with that waiting period when necessary, in Sony's reasonable judgment, to protect or enforce Sony's rights.  Sony shall not be required to notify you before signing short form assignments of rights granted in this agreement for recordation with the United States Copyright Office or with any other copyright authority in the Territory. Sony shall provide you with copies of any such agreement Sony signs in your name pursuant to this paragraph 6.01, but Sony's failure to do so shall not constitute a breach hereof.

6.02.    Administration.  You hereby grant to Sony and its Licensees the sole and exclusive right during the Term and Retention Period, throughout the Territory, to:

(a)     license and cause other Persons to license the exploitation of the Compositions in any manner, including, without limitation, the right to license broadcast and other public performances, sound synchronization in audiovisual works, uses on the Internet or on wireless devices, and the right to license the manufacture, distribution, transmission and sale of Phonograph Records embodying any one (1) or more of the Compositions;

(b)     administer and grant rights in the Compositions and the copyrights therein;

(c)     print, publish and sell printed editions of the Compositions;

7

*P. M.*

(d)     collect all monies earned prior to, during and after the Term and Retention Period, with respect to all uses of the Compositions, including without limitation all mechanical, synchronization, print, public performance income; in addition, Sony and its Licensees shall have the right to continue to collect, for a period of one (1) year after the expiration of the applicable Retention Period all monies earned during the Term and applicable Retention Period; and for a period of eighteen (18) months after the expiration of the applicable Retention Period, all monies earned during the Term and applicable Retention Period (the "Collection Period");

(e)     make arrangements, translations, or otherwise adapt or change any one (1) or more of the Compositions in any manner; and

(f)     otherwise administer the Compositions and the copyrights therein and to act as the publisher thereof and exercise all of such rights as fully as if the copyrights were registered in Sony's name alone and as if Sony alone were the sole and exclusive owner thereof.

6.02.1. Licensing Restrictions. Notwithstanding anything to the contrary contained in paragraph 6.02 above, during the Term, Sony will not (except in the case of so-called "blanket" catalog licenses) do any of the following without your consent:

(a)     make or authorize any fundamental changes to the words, music, harmonic structure, and/or title of any Composition hereunder (except authorizing foreign translations thereof) or any parody of such Composition; provided, however, that any changes to the words and/or music of any Composition in a third party musical arrangement resulting from any change not authorized in a mechanical license granted by Sony voluntarily in the ordinary course of business or involuntarily as a result of the compulsory mechanical license provisions of the U.S. Copyright Act shall not be deemed to be a violation by Sony of this provision. Notwithstanding the foregoing, Sony shall not, without your consent (as set forth above), authorize a third party translator to acquire a copyright interest in the Composition by virtue of writing the lyrics for a foreign translation, unless a payment of royalties or transfer of copyright is required by applicable law in the country of translation;

(b)     license synchronization rights for any Composition in any theatrical motion picture which receives an "X" or "NC-17" or equivalent rating (which rating Sony knew or reasonably should have known such motion picture would receive at the time of the licensing);

(c)     grant licenses authorizing synchronization of any Composition for featured use in a television program or radio commercial advertising health and hygiene products, tobacco products, firearms, nuclear energy, alcoholic beverages, political issues, political candidates, religious issues, or political parties;

(d)     license any Composition for use in connection with the commercial merchandising of any product or service, other than sheet music, sound recordings, audiovisual recordings or live musical appearances; or

8

(e)    grant any so-called "grand rights" or dramatization rights in or to any Composition.

6.03.    Power of Attorney.    You hereby irrevocably authorize, empower, and appoint Sony your true and lawful attorney, for the term of the copyrights in the respective Compositions and any renewals or extensions thereof, to secure and renew the copyright in the Compositions for the initial and any renewal periods for your and Sony's benefit, to initiate and compromise any claim or action with respect to the Compositions, including, without limitation, any claim or action against infringers of Sony's or your rights in the Compositions, and to execute in your name, and the name of any Controlled Songwriter, any and all documents and/or instruments necessary or desirable to accomplish the foregoing and/or to evidence Sony's (or your or Controlled Songwriter's) ownership of the copyrights during such periods and/or to effectuate Sony's rights hereunder.    Notwithstanding the foregoing, but subject to the next two sentences, Sony shall give you ten (10) days' notice to sign any such document before signing any document in your name.    Sony may dispense with that waiting period when necessary, in Sony's reasonable judgment, to protect or enforce Sony's rights.    Sony shall not be required to notify you before signing short form assignments of rights granted in this agreement for recordation with the United States Copyright Office or with any other copyright authority in the Territory. The power granted herein is coupled with an interest and irrevocable.    Sony shall cause the copyrights in the Compositions to be registered or re-registered jointly in the name of Sony and you and such additional Parties as may be appropriate.

6.04.    Name and Likeness.

(a)    Sony and any Licensee of Sony each shall have the right and may grant to others the right to reproduce, print, publish, or disseminate in any medium your name, the name, portrait, picture and likeness of each Controlled Songwriter (including, without limitation, all professional, group, and other assumed or fictitious names used by each Controlled Songwriter and by two or more Controlled Songwriters collectively), and biographical material concerning you and each Controlled Songwriter, as news or information, for purposes of trade, or for advertising and marketing purposes solely in connection with the exploitation of musical compositions and for institutional advertising and marketing for Sony.

(b)    Sony shall make available to you for your approval any pictures of any Controlled Songwriter or biographical material about any Controlled Songwriter which Sony proposes to use in connection with this agreement in the United States.    Sony shall not use any material of which you disapprove in writing, provided you furnish substitute material within ten (10) days of such disapproval, satisfactory to Sony in Sony's sole discretion.    This subparagraph shall not apply to any material previously approved by you or used by Sony.    No inadvertent failure to comply with this subparagraph shall constitute a breach of this agreement, and you shall not be entitled to injunctive relief to restrain the continuing use of any material used in contravention of this subparagraph.    Notwithstanding the foregoing, Sony shall use reasonable efforts to cure any such failure on uses of materials manufactured by Sony after the date upon which Sony receives your written notice of such failure.

9

11/15/11                                         PRK  [SMPD  11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

6.05.   Option to Purchase.  If at any time during the Term or thirty (30) days thereafter you receive a bona fide offer from any Party to purchase all or any portion of your interest in the Compositions, or any one (1) of them, and you desire to sell such interest, you shall accord to Sony First Negotiation Rights with respect to such proposed purchase.

## 7.   **ADVANCES**

7.01.   All monies paid by Sony to you or any Controlled Songwriter during the Term, other than royalties paid pursuant to Article 9 below, shall constitute Advances unless otherwise expressly agreed in writing by an authorized officer of Sony.  Each payment (except such royalties) made by Sony during the Term to another Person on behalf of you or any Controlled Songwriter shall also constitute an Advance if it is made with the consent of you or any Controlled Songwriter, if it is required by law, or if it is made by Sony to satisfy an obligation incurred by you or any Controlled Songwriter in connection with the subject matter of this agreement.  In the event you request that Sony pay all or a portion of an Advance payable to you pursuant to paragraph 7.02 below prior to the time such Advance is payable pursuant to paragraph 7.02 below (each such Advance, an "Out-of-Cycle Advance"), such Out-of-Cycle Advance shall be deemed a pre-payment (in whole or in part, as applicable) of the next Advance(s) that are due and payable hereunder.

7.02.   (a)   Promptly after the complete execution of this agreement and all schedules and exhibits attached hereto, Sony shall pay you Twenty-Five Thousand Dollars ($25,000) (the "Execution Advance") in respect of the Initial Contract Period.

(b)   Option Periods:  In the First Option Period, Sony shall pay you an Advance equal to two-thirds (2/3) of whichever of the following amounts is less, but in no event shall such Advance be less or more than the minimums and maximums, respectively, below:

(1)   The amount of the royalties credited to your account in respect of mechanical income under paragraph 9.02 below derived from the exploitation in the United States of New Compositions ("U.S. Mechanical Royalties") Delivered in fulfillment of your MDRC for the previous Contract Period, as shown by the two (2) most recent semi-annual royalty accounting statements rendered to you by Sony before the date of your Release Notice for the Contract Period for which the Advance is being calculated, including Pipeline Income in connection therewith; or

(2)   twice the average of the amounts of such U.S. Mechanical Royalties derived from exploitations over the previous four (4) most recent semi-annual royalty accounting statements including Pipeline Income in connection therewith.

|  | Minimum | Maximum |
|---|---|---|
| First Option Period: | $35,000 | $70,000 |

10

11/15/11                                                    PRK [SMPD  11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

Sony shall pay the Advance in respect of the First Option Period promptly after the commencement thereof.

    7.03.    Intentionally Omitted Without Implication.

    7.04. (a)        During the Initial Contract Period, Sony will promptly reimburse you up to Three Thousand Five Hundred Dollars ($3,500) for actual out-of-pocket costs ("Video Costs") incurred in connection with the production of music videos ("Videos") embodying any New Composition 100% controlled by you (or a pro rata portion of such amount in respect of a New Composition which is less than one hundred percent (100%) written by you, as calculated pursuant to subparagraph 2.04(b) above). All Video Costs must have been approved by Sony in writing prior to the date on which they were incurred and Sony shall not be required to make any payments to you under this paragraph until (i) you have Delivered to Sony the Videos for which reimbursement is requested, and (ii) you have furnished Sony with documentation, reasonably satisfactory to Sony, substantiating the Video Costs concerned and documenting Sony's rights in any Videos as set forth in subparagraph 7.04(b) below. Sony shall not be obligated to reimburse you for any expenses constituting salaries of employees, rent or overhead. All Video Costs are one hundred percent (100%) recoupable from royalties earned hereunder.

    (b)    Each Video shall be owned by you and you hereby license to Sony the right to exploit each such Video on a royalty free basis.

7.05.    Bonus Advances

    (a)    Singles.

        (i)    For the purposes of this paragraph 7.05, a "Bonus Top 10 Single" shall mean a single (as that terms is generally understood in the recorded music industry) having a commercial release in the United States by a Major U.S. Record Company during the Term, and embodying a New Composition in fulfillment of your MRC, which single reaches the "Top 10" of the "Billboard Hot 100" chart or the "Billboard Hot Latin Chart" chart during the Term for at least two (2) consecutive weeks.

        (ii)    With respect to each Bonus Top 10 Single, Sony shall pay you an additional Advance (each, a "Radio Bonus Advance") in the amount of Fifteen Thousand Dollars ($15,000) promptly following your written notice to Sony accurately stating the title of such Bonus Single and confirming the chart position of such Bonus Single. The Radio Bonus Advances shall be payable only in the event your notice is received by Sony not later than ninety (90) days following the date of *Billboard*'s initial report that a Single has become a Bonus Top 10 Single. A Radio Bonus Advance shall be proportionately reduced if less than 100% of the New Composition concerned (as calculated pursuant to subparagraph 2.04.1(b)) is Delivered to Sony. Radio Bonus Advances shall only be paid for a single's initial appearance as a Bonus Top 10 Single. (Accordingly, a single which is a Bonus Top 5 Single for its initial appearance in the "Top 10" of the "Billboard Hot 100" chart shall only receive one Radio Bonus Advance (i.e., $15,000), regardless of future chart positions.) In no event shall Sony pay more than a total of

11

*6. 1W*

Thirty Thousand Dollars ($30,000) in Radio Bonus Advances for any one New Composition (or the applicable pro-rata share thereof) and in no event shall any Radio Bonus Advance be payable following the expiration of the Term.

## 8.   **INTENTIONALLY OMITTED WITHOUT IMPLICATION**

## 9.   **ROYALTIES**

Sony shall pay you the following royalties specifically attributable to Sony's exploitation of the Compositions hereunder throughout the Territory:

9.01.   Public Performance Income. Fifty percent (50%) of Net Income derived from the income collected by Sony with respect to public performances of the Compositions.

9.02.   Mechanical Income. Seventy-five percent (75%) of Net Income derived from Sony's license of the Compositions to others for use in Phonograph Records; except that Sony shall pay you seventy percent (70%) of such Net Income derived from Cover Recordings.

9.03.   Synchronization Income. Seventy-five percent (75%) of Net Income derived from Sony's license of the Compositions to others for synchronization in audiovisual works, except that Sony shall pay you seventy percent (70%) of such Net Income derived from synchronization licenses Secured by Sony.

9.04.   Other Income. Seventy-five percent (75%) of Net Income derived from any exploitation of the Compositions not specifically referred to in paragraphs 9.01, 9.02 and 9.03 above, including without limitation, print income.

9.05.   Any direct or indirect payments to you or any Controlled Songwriter with respect to the Compositions (other than the so-called "songwriter's share" of non-dramatic public performance income) shall be immediately reported and turned over to Sony for accounting under this Article 9. Without limiting the generality of the foregoing or Sony's rights under paragraph 12.02 below, any monies received by you or any Controlled Songwriter in connection with writing motion picture or television scores shall be subject to this paragraph 9.05.

## 10.   **ROYALTIES ACCOUNTINGS**

10.01.   Sony shall compute your royalties as of each June 30th and December 31st for the prior six (6) months, in respect of each such six (6) month period in which there are transactions on which royalties are payable to you hereunder. Sony reserves the right to alter such accounting periods, without notice (but Sony shall attempt to use reasonable efforts to notify you in the event of such alteration, provided that inadvertent failure to notify you shall not constitute a breach hereof), but in no event shall Sony account less frequently than every six (6) months. On the next September 30th or March 31st (or, if Sony alters the accounting periods, on the date ninety (90) days following the end of the period concerned), Sony shall send you a statement covering those royalties and shall pay you any royalties that are due after deducting unrecouped

12

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document      Page 30 of 83

Advances. Sony shall not be required to send you a royalty payment for any period in which the royalties payable to you shall be One Hundred Dollars ($100) or less, but shall send you a statement covering such royalties; provided, however, that such royalties shall be held and paid along with the next statement requiring payment in excess of One Hundred Dollars ($100). If Sony makes any overpayment to you, you shall reimburse Sony for that overpayment; Sony may also deduct any overpayment from any monies due or becoming due to you. Sony shall have the right to maintain royalty reserves against anticipated returns and credits only with respect to print uses of the Compositions; provided, however, that such reserves during any particular semi-annual accounting period shall not exceed twenty-five percent (25%) of the aggregate number of units of sheet music shipped to Sony's customers who have a full right of return. Each such royalty reserve shall be liquidated equally over the next four (4) semi-annual accounting periods following the accounting period during which the applicable reserve is initially established.

10.02. For the purposes of this paragraph 10.02, exploitation of Compositions outside the United States is called a "foreign exploitation". Sony shall compute your royalties in the same national currency in which Sony's Licensee pays Sony for that foreign exploitation, and Sony shall credit those royalties to your account at the same rate of exchange at which the Licensee pays Sony. For purposes of accounting to you, Sony shall treat any foreign exploitation as an exploitation occurring during the same six (6) month period in which Sony receives Sony's Licensee's accounting and payment for that foreign exploitation. (Sony's licensees shall account to Sony on no less than a semi-annual basis.) If any Sony Licensee deducts any taxes from its payments to Sony, Sony may deduct a proportionate amount of those taxes from your royalties. If any law, any government ruling, or any other restriction affects the amount of the payments that a Sony Licensee can remit to Sony, Sony may deduct from your royalties an amount proportionate to the reduction in the Licensee's remittances to Sony. If Sony cannot collect payment for any foreign exploitation in the United States in U.S. Dollars, Sony shall not be required to account to you concerning that foreign exploitation, except as provided in the next sentence. Sony shall, at your request and at your expense, deduct from the monies so blocked and deposit in a foreign depository the equivalent in local currency of the royalties which would be payable to you on the foreign exploitation concerned, to the extent such monies are available for that purpose, and only to the extent to which your royalty account is then in a fully recouped position. All such deposits shall constitute royalty payments to you for accounting purposes hereunder.

10.03. Sony shall maintain Books and Records which you may examine, at your expense. You may make those examinations only for the purpose of verifying the accuracy of the statements sent to you under paragraph 10.01 above. You may make such an examination for a particular statement only once, and only within three (3) years after the date when Sony sends you that statement. (Sony shall be deemed conclusively to have sent you each statement on the date prescribed in paragraph 10.01 above unless you notify Sony otherwise, with respect to any particular statement within ninety (90) days after that date.) You may make those examinations only during Sony's usual business hours, on reasonable written notice for a reasonably convenient time, and at the place where Sony keeps the Books and Records to be examined. You shall send Sony a copy of your audit report concerning your examination of Sony's Books

13

and Records within forty-five (45) days of your completion thereof; provided that your inadvertent failure to timely supply Sony with a copy of such report shall not constitute a breach hereof. You may appoint an attorney or a certified public accountant to make such an examination for you, but not if that attorney or accountant or that attorney's or accountant's firm has begun an examination of Sony's books and records for any Person except you unless that examination has been concluded and any applicable audit issues have been resolved. The rights hereinabove granted to you shall constitute your sole and exclusive rights to examine Sony's Books and Records.

10.03.1. Notwithstanding the penultimate sentence of paragraph 10.03, if Sony notifies you that the representative designated by you to conduct an examination of Sony's Books and Records under paragraph 10.03 is engaged in an examination on behalf of another Person ("Other Examination"), you may nevertheless have your examination conducted by your designee, and the running of the time within which such examination may be made shall be suspended until your designee has completed the Other Examination, subject to the following conditions:

      (a)     You shall notify Sony of your election to that effect within fifteen (15) days after the date of Sony's said notice to you;

      (b)     Your designee shall proceed in a reasonably continuous and expeditious manner to complete the Other Examination and render the final report thereon to the client and Sony; and

      (c)     Your examination shall not be commenced by your designee before the delivery to Sony of the final report on the Other Examination, shall be commenced within thirty (30) days thereafter, and shall be conducted in a reasonably continuous and expeditious manner.

(The preceding provisions of this paragraph 10.03.1 shall not apply if Sony elects to waive the provisions of the penultimate sentence of paragraph 10.03 which require that your representative shall not be engaged in any Other Examination.)

10.03.2. Notwithstanding paragraphs 10.03 and 10.03.1 above, if your accountant's examination has not been completed within three (3) months from the time he begins it, Sony may require your accountant to terminate it on seven (7) business days' notice to you at any time; Sony will not be required to permit your accountant to continue the examination after the end of that seven (7) business day period.

10.04. You acknowledge that Sony's Books and Records contain confidential trade information and you warrant and represent that neither you nor the Controlled Songwriter nor the representatives of you and/or the Controlled Songwriter shall communicate to others or use on behalf of any other Person any facts or information obtained as a result of such examination of Sony's Books and Records; provided, however, that such information may be disclosed by you or the Controlled Songwriter to the extent required by any governmental agency or by law.

14

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document     Page 32 of 83

10.05. If you have any objections to a royalty statement, you shall give Sony specific notice of that objection and your reasons therefor within three (3) years after the date when Sony is deemed to have sent you that statement under paragraph 10.03 above. Each royalty statement shall become conclusively binding on you at the end of that three-year period, and you shall have no right to make any other objections to the statement. You have no right to sue Sony in connection with any royalty accounting, or to sue Sony for royalties on Compositions exploited by Sony during any period a royalty accounting covers, unless you commence such suit prior to the end of that three-year period. You hereby consent to the aforesaid limitations period notwithstanding any longer limitations period that might be available under applicable law. If you commence suit on any controversy or claim concerning royalty accountings rendered to you under this agreement, you shall have no right to terminate this agreement or avoid the performance of your obligations hereunder by reason of any such claim. The preceding four (4) sentences shall not apply to any item in a royalty accounting if you conclusively establish that the item was fraudulently misstated by Sony.

10.06. You hereby authorize and direct Sony to withhold from any monies due you from Sony any portion thereof required to be withheld by the United States Internal Revenue Service and/or any other governmental authority, and to pay same to the United States Internal Revenue Service and/or such other authority. No Advances or other payments shall be made pursuant to this agreement until you have completed the Internal Revenue Service Form attached hereto as Annex "A".

10.07. All payments made to you hereunder shall be made in the name of JUAN ELIACIM MARTINEZ PIMENTEL.

## 11.    INTENTIONALLY OMITTED WITHOUT IMPLICATION

## 12.    ADDITIONAL WARRANTIES; REPRESENTATIONS; RESTRICTIONS; INDEMNITIES

12.01. You warrant and represent:

(a)     Intentionally Omitted Without Implication.

(b)     The Compositions and all rights and copyrights therein are your sole property, free from any claims whatsoever by any Person. Prior to the execution of this agreement, you have received no notice of any such claim nor are you aware of any such claim.

(c)     All rights in the Compositions herein granted to Sony shall be available to Sony throughout the Territory without restriction, except as may be specifically indicated herein.

(d)     You have the right and power to enter into and fully perform this agreement.

15

(e)    Sony shall not be required to make any payments of any nature for, or in connection with, the acquisition, exercise or exploitation of rights by Sony pursuant to this agreement except as specifically provided in this agreement. Without limiting the generality of the foregoing, you shall be solely responsible for any payments due to Songwriters with respect to Sony's exploitation of the Compositions and the other rights granted to Sony hereunder.

(f)    There are no advances made by ASCAP, BMI, SESAC or any other third Persons which are recoupable from income derived from any use of the Compositions with the exception of a Ten Thousand Dollar ($10,000) advance from BMI (the "BMI Advance") which you received prior to the date of this agreement and which is excluded from this agreement. For the avoidance of doubt, you warrant and represent the BMI Advance is solely recoupable from the so-called "songwriter share" of public performance income. On or before your execution of this agreement you shall deliver to Sony letters in the form attached hereto as Exhibits B, C and F and such other documents from other Parties as Sony may reasonably request, in connection with this subparagraph.

(g)    No Materials, as defined, or any use thereof, shall violate any law or infringe upon or violate the rights of any Person. "Materials," as used in this Article, means: (1) all Compositions, (2) each name used by Songwriters, individually or as a group, in connection with the Compositions, and (3) all other musical, dramatic, artistic and literary materials, ideas, and other intellectual properties, furnished or selected by you or Songwriter(s) and contained in or used in connection with the Compositions or the exploitation thereof.

(h)    You are currently a member in good standing of BMI pursuant to a current and valid membership agreement , and you shall at all times during the Term be a member in good standing of ASCAP, BMI or SESAC. If at any time during the Term you change your society affiliation, you shall provide Sony notice promptly thereof and shall, promptly after Sony's request, execute performance society letters of direction, or other documentation reasonably required by Sony to allow Sony to implement its rights under this agreement. In the event that you are not affiliated with any such society and/or such affiliation lapses during the Term, Sony shall have the right, but not the obligation, to register a one hundred percent (100%) interest in the Compositions with ASCAP, BMI or SESAC, as determined in Sony's discretion, in Sony's name, subject to the payment of royalties to you hereunder.

(i)    You have not, nor has any third party, on your behalf, collected any income arising in the Territory in connection with the Compositions at any time prior to the commencement of the Term, nor shall you collect or permit the collection of any such income during the Term, the Retention Period or the Collection Period, if any.

(j)    To the extent you are in breach of any warranty or representation made by you in this agreement, Sony shall, in addition to its other rights, have the right to deduct from any Advances and/or royalties due you, an amount equal to any monies which Sony is unable to collect by reason of such monies having been collected by you or on your behalf.

16

E. M.

12.02.  During the Term, neither you nor any Controlled Songwriter shall (a) enter into any agreement which would interfere with the full and prompt performance of your obligations hereunder, (b) perform or render any services for the purpose of writing musical compositions for any Person other than Sony, or (c) enter into any creative collaboration with other songwriters and/or composers unless you grant to Sony for exclusive exploitation hereunder Controlled Songwriter's fractional creative share in the New Composition concerned.  If any New Composition (or right in a New Composition) is jointly owned in unequal shares you shall deliver to Sony, simultaneously with the Delivery of the New Composition concerned, a declaration in the form of Exhibit D attached hereto executed by each co-owner.  If that declaration is not furnished Sony shall be entitled to rely conclusively on your advice regarding the extent of each co-ownership interest.  Paragraph 12.05 below shall apply to any claim that is inconsistent with that declaration or advice.

12.03.  Without limitation of Sony's exclusive rights hereunder, at no time during the Term or Retention Period shall you or any Controlled Songwriter grant to any Person any license with respect to any Composition, including, without limitation, any mechanical license for the reproduction of any Compositions on Phonograph Records (whether or not such license rate is lower than the then current maximum statutory rate, or otherwise varies from statute).  You warrant and represent that the relevant text of any such licenses made prior to the Term is annexed hereto as Exhibit E.

12.04.  The services of the Controlled Songwriters and the other exclusive rights granted hereunder are unique and extraordinary, and the loss thereof cannot be adequately compensated in damages, and Sony shall be entitled to injunctive relief to enforce the provisions of this agreement. (The preceding sentence shall not be construed to preclude you from opposing any application for such relief based upon contest of the other facts alleged by Sony in support of the application.)

12.05.  (a)  You shall at all times indemnify and hold harmless Sony and any Licensee of Sony from and against any and all claims, losses, damages, liabilities, costs and expenses, including, without limitation, legal expenses and reasonable counsel fees, arising out of any breach or alleged breach of any warranty or representation made by you in this agreement or any other act or omission by you or the Controlled Songwriter, provided the claim concerned has been settled or has resulted in a binding judgment from a court of competent jurisdiction.  Sony shall notify you of any action commenced on such a claim.  You may participate in the defense of any such claim through counsel of your selection at your own expense, but Sony shall have the right at all times, in Sony's sole discretion, to retain or resume control of the conduct of the defense.  Pending the resolution of any such claim, Sony will not withhold monies which would otherwise be payable to you under this agreement in an amount exceeding your potential liability to Sony under this paragraph.  If no action or other proceeding for recovery on such a claim has been commenced within eighteen (18) months after its assertion, Sony shall not continue to withhold monies in connection with that particular claim under this subparagraph 12.05(a) unless Sony has specific reason to believe that such a proceeding may be instituted notwithstanding the passage of that time, and Sony shall use reasonable efforts to so advise you of the same.

17

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document      Page 35 of 83

(b)    If Sony pays more than Five Thousand Dollars ($5,000) in settlement of any such claim, you shall not be obligated to reimburse Sony for the excess unless you have consented to the settlement, except as provided in the next sentence. If you do not consent to any settlement proposed by Sony for an amount exceeding Five Thousand Dollars ($5,000), you shall nevertheless be required to reimburse Sony for the full amount paid unless you make bonding arrangements, satisfactory to Sony in Sony's reasonable discretion, to assure Sony of reimbursement for all damages, liabilities, costs and expenses (including, without limitation, legal expenses and reasonable counsel fees) which Sony or Sony's Licensees may incur as a result of that claim.

## 13.    DEFINITIONS

As used in this agreement the following terms shall have the meanings set forth below:

13.01.  "Advance" - a prepayment of royalties. Sony may recoup Advances from royalties to be paid to or on behalf of you pursuant to this agreement.

13.02.  "Affiliate" - Controlled Songwriter, any Person which you or any Controlled Songwriter own or in which you or any Controlled Songwriter have an interest, in whole or in part, any Person the operation of which is controlled directly or indirectly by you or any Controlled Songwriter and any Person which is owned or controlled by the same Person which owns or controls you. Upon formation of an Affiliate subsequent to the date hereof, you shall promptly give notice to Sony thereof and deliver to Sony a counterpart to this agreement executed by such Affiliate. Such execution shall not relieve you of any of your warranties, representations or agreements hereunder.

13.03.  "Album" - one (1) or more audio-only Phonograph Records, at least thirty-five (35) minutes in playing time, sold in a single package; provided, however, that any such Record that is a so-called "greatest hits" or a so-called "live" Album shall not constitute an Album hereunder.

13.04.  "Books and Records" - that portion of Sony's books and records which specifically report monies received by Sony from the commercial exploitation of the Compositions for which a royalty is payable to you hereunder; provided that the term "Books and Records" shall not be deemed to include any other of Sony's books or records.

13.05.  "Commercial Release"; "Major Release"; "Major U.S. Record Company"; "Major Release" -

(a)    "Commercial Release" of Phonograph Records - distribution by a record company throughout the United States on a top-line label of that company. The initial commercial release or shipment date for Phonograph Record units established by the record company concerned shall be treated as the date of initial Commercial Release for the purposes of this agreement. If all major record companies release all of their so-called "front line" Albums

18

solely in the digital format and do not release such Album as compact discs, then a Commercial Release shall mean digital release of the Album concerned.

(b)     "Major Release" - Commercial Release of an Album by a Major Artist by a Major U.S. Record Company.

(c)     A "Major U.S. Record Company" refers to Sony Music Entertainment, the EMI Group, Universal Music Group, and the Warner Music Group, or to any top-line label exclusively distributed, throughout the United States, by any of the foregoing, or to any record company that has an established track record of paying mechanical royalties accurately and in a timely manner. For the avoidance of doubt, distribution companies wholly or partly owned by or otherwise affiliated with any of the foregoing (e.g., RED Distribution) shall not be deemed to be distributed by any of the foregoing.

(d)     A "Major Artist" refers to a recording artist who is a party to an exclusive recording agreement with a Major U.S. Record Company and whose Album on which your songs are embodied achieves net sales in the Major Territory of at least ten thousand (10,000) units within the first eighteen (18) months of the initial release of the Album concerned. For purposes of the preceding sentence, ten (10) digital single sales shall count as the sale of one (1) Artist Album.

(e)     A "Major Territory" shall refer to the United States, Mexico, Spain and Brazil.

13.06.  "Contract Period" - the Initial Contract Period, or any Option Period, of the Term (as such periods may be suspended or extended as provided herein).

13.07.  "Cover Recording" - any recording of a Composition on Phonograph Records secured by Sony, other than recordings embodying the featured performances of the Songwriter who wrote the Composition concerned.

13.08.  "Deliver", "Delivery", or "Delivered" - when used with respect to Compositions, means the actual receipt by Sony's Business Affairs and Administration Department at its offices in New York, New York, of a compact disc (CD) Record or DAT tape and a lyric sheet of the Composition, executed assignments of copyright and authorizations in the form of the Exhibits attached hereto, a notice documenting your ownership interest in the Compositions concerned in the form of Exhibit D attached hereto, and copies of your agreements with the Songwriter(s) concerned. Delivery, in addition, when used with respect to Old Compositions, means the actual receipt by Sony of all data and records in your possession or control regarding the copyrights therein and the interests of any co-writers, co-owners and/or other parties in such Compositions, including, without limitation, certificates of registration of claims to copyright, notices of use, correspondence, demo records, and mechanical licenses with respect thereto.

13.09.  Intentionally Omitted Without Implication.

19

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
                    Document       Page 37 of 83

13.09.1   Intentionally Omitted Without Implication.

13.10.   "Gross Income" - all monies earned, actually received by or credited to Sony in the United States as compensation for the use of any Composition(s) identifiable by title.  With respect to monies earned outside the United States, calculation of "Gross Income" shall include, for the purposes of this paragraph, any share of such monies retained by Sony's wholly-owned Licensees (i.e., at source).

13.11.   "Licensees" - music publishing licensees, including without limitation, music publishing subsidiaries, wholly or partly owned, divisions and affiliates of Sony Music Holdings, Inc., and Subpublishers.

13.12.   "Net Income" - Gross Income, less any amounts Sony is permitted to deduct from such Gross Income pursuant to the terms of this agreement, including, without limitation, any amounts paid to partial owners of Compositions or other publishers, if any, the actual costs incurred in connection with the registration of copyrights, actual costs of translating and arranging the Compositions, out-of-pocket fees or costs connected with the preparation and distribution of lead sheets of the Compositions, actual costs of collecting income with respect to the Compositions (or, if Sony collects income directly instead of via a collection society or other third party, an equivalent amount not to exceed the percentage of income most recently charged by the applicable collection society or other third party at the time such deduction is made), out-of-pocket fees paid to or charged by a trustee or collecting agent for the licensing of the Compositions, all out-of-pocket expenses (including reasonable legal fees and expenses) incurred by Sony in connection with any claim or suit brought by or against Sony concerning the Compositions (other than those claims or suits subject to full reimbursement under paragraph 12.05 above), and demo costs requested or approved by you.  Expenses of salaries of employees, rent and overhead shall not be deducted.

13.13.   "Person" and "Party" - any individual, corporation, partnership, association or other organized group of persons or legal successors or representatives of the foregoing.

13.14.   "Pipeline Income" - Sony's good faith estimate of your share of U.S. Mechanical Royalties earned from the exploitation of the applicable New Compositions, which have been received by Sony in the United States following the most recent semi-annual accounting statement rendered to you by Sony, but prior to your fulfillment of the MDRC for the Current Contract Period, and which have not yet been credited to your royalty account hereunder.

13.15.   "Records" and "Phonograph Records" - all forms of reproductions, now or hereafter known, manufactured or distributed primarily for home use, school use, jukebox use, or use in means of transportation, embodying (a) sound alone or (b) sound coupled with visual images, e.g. "sight and sound" devices.  A "Phonograph Record" is a Record as embodied by the manufacturer and/or distributor in a physical, non-interactive Record configuration (e.g., vinyl LP's, cassettes, compact discs, videocassettes) prior to its distribution to the consumer, as opposed to the transmission or communication of a Record to the consumer prior to being

20

embodied in a physical Record configuration, whether or not it may at some point be embodied in a physical Record configuration, by the consumer or under the consumer's direction or control.

13.16. (a)  "Record Company" - the Major U.S. Record Company with which Artist is a party to a Record Agreement during the Term.

(b)  "Record Agreement" - an exclusive term agreement whereby the Artist has furnished Artist's exclusive recording services to a Record Company.

13.17. "Songwriter(s)" - all writers and composers of the Compositions, including Controlled Songwriters.

13.18. "Subpublisher" - A Person authorized by Sony, directly or indirectly, to administer and act as a publisher of one (1) or more Compositions on a general basis and grant rights in them to users or other Subpublishers, in a particular territory.

13.19. "Territory" - the universe.

## 14.  NOTICES

14.01. Except as otherwise specifically provided herein, all notices under this agreement shall be in writing and shall be given by courier or other personal delivery or by registered or certified mail at the appropriate address listed below or at a substitute address designated by written notice by the party concerned.

TO YOU:      The address shown above.

TO SONY:     550 Madison Avenue
             New York, New York 10022-3211
             Attention: Executive Vice President,
                  Business and Legal Affairs

AND

Sony Corporation of America
Legal Department
550 Madison Avenue
New York, New York 10022-3211
Attention: Senior Vice President

Notices shall be deemed given when mailed or, if personally delivered, when so delivered, except that a notice of change of address shall be effective only from the date of its receipt.

11/15/11                                                          PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

## 15.    EVENTS OF DEFAULT; REMEDIES

15.01.  In the event of your dissolution or the liquidation of your assets, or the filing of a petition in bankruptcy or insolvency or for an arrangement or reorganization, by, for or against you, or in the event of the appointment of a receiver or a trustee for all or a portion of your property, or in the event that you shall make an assignment for the benefit of creditors or commit any act for, or in, bankruptcy or become insolvent, or in the event of any default or alleged default by you under a Controlled Songwriter Agreement which default is not cured in accord with paragraph 11.02, or in the event you shall fail to fulfill any of your material obligations under this agreement for any other reason, then at any time after the occurrence of any such event, in addition to any other remedies under this agreement or otherwise, Sony shall have the option by notice to require that Controlled Songwriter(s), jointly and severally, render his (their) personal services directly to it for the remaining balance of their Term, including any extensions thereof, for the purpose of writing, delivering and releasing musical compositions upon all the same terms and conditions as are herein contained. In such event Controlled Songwriter(s) shall be deemed substituted for you as a Party to this agreement, effective from and after the date of Sony's exercise of such option, and, in respect of Compositions Delivered subsequently, the royalty and any Advances payable hereunder shall be payable to the Controlled Songwriter(s), subject to recoupment of all Advances.

15.02.  If because of a(n): act of God; inevitable accident; fire; lockout, strike or other labor dispute; riot or civil commotion; act of public enemy; enactment, rule, order or act of any government or governmental instrumentality (whether federal, state, local or foreign); failure of technical facilities; failure or delay of transportation facilities; or other cause not reasonably within Sony's control; Sony is materially impaired in the exploitation or administration of musical compositions, then, without limiting Sony's rights, Sony shall have the option by giving you notice to suspend the running of the Current Contract Period for the duration of any such contingency plus such additional time as is necessary so that Sony shall have no less than thirty (30) days after the cessation of such contingency in which to exercise the Contract Period Option, if any, to extend the Term for the next Option Period. If any suspension imposed under this paragraph by reason of an event affecting no music publisher except Sony continues for more than six (6) months, you may request that Sony, by notice, terminate the suspension by notice given to you within thirty (30) days after Sony's receipt of your notice. If Sony does not do so, the Term shall terminate at the end of that thirty (30) day period (or at such earlier time as Sony may designate by notice to you), and all parties shall be deemed to have fulfilled all of their obligations under this agreement except those obligations which survive the end of the Term (such as warranties and the obligation to pay royalties).

15.03.  Notwithstanding Writer's rights in subparagraph 4.02(b) above, if (1) you fail to satisfy your MDRC for the Initial Contract Period within two (2) years after commencement of the Term or (2) if you fail to fulfill your MDC for any succeeding Contract Period within two (2) years following your fulfillment of the MDRC for the prior Contract Period, then Sony shall have the following options at all times:

22

11/15/11                                                PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

(a)     to terminate the Term;

(b)     to suspend Sony's obligations to make payments under this agreement until you have cured the default (this subparagraph 15.03(b) shall not apply to remittances of royalties under Article 9 above actually becoming due to you hereunder). Advances shall not be deemed "royalties" for the purpose of the preceding sentence; and

(c)     to waive fulfillment of all or part of the MDRC for the Contract Period concerned and increase the MDRC in succeeding Contract Period(s) by the number of Compositions which have not been Delivered in fulfillment of the MDRC.

Sony may exercise each of the foregoing options, if at all, by sending you notice thereof. No exercise of an option under this paragraph shall limit Sony's rights to recover damages by reason of your default, Sony's rights to exercise any other option under this agreement, or any of Sony's other rights or remedies.

## 16.     **INTENTIONALLY OMITTED WITHOUT IMPLICATION**

## 17.     **MISCELLANEOUS**

17.01. (a)     The parties hereto agree that: (i) all understandings and agreements heretofore made between them with respect to the subject matter hereof are merged in this agreement, which fully and completely expresses their agreement with respect to the subject matter hereof and (ii) except as specifically set forth herein, all prior agreements among the parties with respect to such subject matter are superseded by this agreement which integrates all promises, agreements, conditions and understandings among the parties with respect to such subject matter. In addition, you acknowledge that neither Sony nor any person acting on behalf of Sony (including its agents, its representatives and its attorneys) has made any promise, representation or warranty whatsoever, express or implied, oral or written, not contained herein, and you further acknowledge that you have not executed, and have not been induced to execute, this agreement in reliance upon any promise, representation or warranty. No change or termination of this agreement shall be binding upon Sony unless it is made by an instrument signed by an authorized officer of Sony. No change of this agreement shall be binding on you unless it is made by an instrument signed by you. A waiver by either Party of any provision of this agreement in any instance shall not be deemed or construed as a waiver of such provision, or any other provision hereof, as to any future instance or occurrence. All remedies, rights, undertakings, and obligations contained in this agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, or obligation of either Party. The captions of the articles and paragraphs in this agreement are included for convenience only and shall not affect the interpretation of any provision hereof.

(b)     Sony may assign Sony's rights under this agreement in whole or in part to any subsidiary, affiliated or controlling corporation, to any Person owning or acquiring a substantial portion of the stock or assets of Sony, or to any partnership or other venture in which Sony participates, and such rights may be similarly assigned by any assignee. No such

23

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
                     Document      Page 41 of 83

assignment shall relieve Sony of any of Sony's obligations hereunder. Sony may also assign Sony's rights to any of Sony's Licensees if advisable in Sony's sole discretion to implement the license granted. You shall not have the right to assign this agreement or any of your rights hereunder without Sony's prior written consent. Any purported assignment by you in violation of this paragraph shall be void.

17.02. Neither party shall be entitled to recover damages or to terminate the Term by reason of any breach by the other party of its material obligations, unless the latter party has failed to remedy the breach within thirty (30) days following receipt of notice thereof. (The preceding sentence shall not apply to any termination by Sony under subparagraph 15.03(a) above or to any recovery to which Sony may be entitled by reason of your failure to fulfill your MDRC.) If you claim that additional monies are payable to you hereunder, Sony shall not be deemed in material breach of this agreement unless such claim is reduced to a final judgment by a court of competent jurisdiction and Sony fails to pay you the amount thereof within thirty (30) days after Sony receives notice of the entry of such judgment.

17.03. (a)     As to all matters treated herein to be determined by mutual agreement, or as to which any approval or consent is required, such agreement, approval or consent shall not be unreasonably withheld, and you shall not be entitled to withhold your consent to any exploitation of any Composition for financial reasons (e.g., in order to obtain payment of a designated amount in respect of such license).

(b)     Your agreement, approval or consent, or that of any Controlled Songwriter, whenever required, shall be deemed to have been given unless you notify Sony otherwise within five (5) days following the date of Sony's request therefor. Notwithstanding anything to the contrary contained herein, your agreement, approval or consent rights hereunder ("Your Consent Rights") shall be your rights only, and shall be personal to you; no heir, assignee or other successor to your rights hereunder shall be entitled to exercise Your Consent Rights.

17.04. Each option and/or election granted to Sony hereunder is separate and distinct, and the exercise of any such option or election shall not operate as a waiver of any other option or election unless specifically so stated by Sony in its notice of exercise of such option or election.

17.05. THIS AGREEMENT HAS BEEN ENTERED INTO IN THE STATE OF NEW YORK, AND THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF NEW YORK (WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PRINCIPLES UNDER NEW YORK LAW). THE NEW YORK COURTS (STATE AND FEDERAL), ONLY, SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THIS AGREEMENT; ANY ACTION OR OTHER PROCEEDING WHICH INVOLVES SUCH A CONTROVERSY SHALL BE BROUGHT IN THOSE COURTS, IN NEW YORK COUNTY, AND NOT ELSEWHERE. THE PARTIES WAIVE ANY AND ALL OBJECTIONS TO VENUE IN THOSE COURTS AND HEREBY SUBMIT TO THE

24

Case 3:17-bk-00752    Doc 13    Filed 05/08/17    Entered 05/08/17 13:41:56    Desc Main
Document      Page 42 of 83

JURISDICTION OF THOSE COURTS. ANY PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY, AMONG OTHER METHODS, BE SERVED UPON YOU (AND UPON ANY PERSON ASSENTING TO THIS AGREEMENT) BY DELIVERING IT OR MAILING IT, BY REGISTERED OR CERTIFIED MAIL, DIRECTED TO THE ADDRESS FIRST ABOVE WRITTEN OR SUCH OTHER ADDRESS AS YOU (OR SUCH OTHER PERSON) MAY DESIGNATE PURSUANT TO ARTICLE 14. ANY SUCH PROCESS MAY, AMONG OTHER METHODS, BE SERVED UPON THE CONTROLLED SONGWRITER OR ANY OTHER PERSON WHO APPROVES, RATIFIES, OR ASSENTS TO THIS AGREEMENT TO INDUCE SONY TO ENTER INTO IT, BY DELIVERING THE PROCESS OR MAILING IT BY REGISTERED OR CERTIFIED MAIL, DIRECTED TO THE ADDRESS FIRST ABOVE WRITTEN OR SUCH OTHER ADDRESS AS THE CONTROLLED SONGWRITER OR THE OTHER PERSON CONCERNED MAY DESIGNATE IN THE MANNER DESCRIBED IN ARTICLE 14 ABOVE. ANY SUCH DELIVERY OR MAIL SERVICE SHALL BE DEEMED TO HAVE THE SAME FORCE AND EFFECT AS PERSONAL SERVICE WITHIN THE STATE OF NEW YORK.

17.06. In entering into this agreement, and in providing services pursuant hereto, you and each Controlled Songwriter have and shall have the status of independent contractors and nothing herein contained shall contemplate or constitute you or any Controlled Songwriter as Sony's agents or employees.

17.07. Monies to be paid to you under this agreement shall not be assignable by you without Sony's written consent, which Sony may withhold in its unrestricted discretion, subject to the next sentence. You may assign royalties to be paid to you under this agreement, provided: (a) no more than one (1) such assignment shall be binding on Sony at any time, and if Sony is notified of more than one (1), Sony shall have the right to rely conclusively on priority of notice to Sony in according priority amongst them; (b) each such assignment shall be subordinate to Sony's continuing right to apply all such royalties due or becoming due in recoupment of all Advances, loans and other offsets which may be recoupable from your royalties, including but not limited to those made under agreements entered into by Sony and you after the date of the assignment concerned; and (c) no such assignment shall be effective until it has been accepted in writing by Sony. Sony shall not unreasonably withhold acceptance of an assignment which is consistent with the terms and conditions of this paragraph, provided that Sony shall not be obligated to consent to any assignment of monies which is made as security or collateral for a loan or other obligation.

17.08. This agreement shall not become effective until executed by all proposed Parties hereto.

11/15/11        PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document     Page 43 of 83

17.09. Any and all riders attached hereto together with this basic document shall be taken together to constitute the agreement between you and Sony.

JUAN ELIACIM MARTINEZ PIMENTEL,
individually and d/b/a
_____ (BMI)

SONY/ATV LATIN MUSIC PUBLISHING LLC

By_____

My taxpayer identification number (social security number or employer identification number) is
_____-_____-_____. Under the penalties of perjury, I certify that this
information is true, correct, and complete.

Juan Eliacim Martinez Pimentel Publishing

26

11/15/11                                        PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement
(Final2).doc

## ANNEX A

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

---

(Appended in accordance with paragraph 10.06)

11/15/11

27

PRK [SMPD 11-20(3)]

G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

**SCHEDULE A**

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

(References include paragraph 3.01)

Compositions

| Title | Writer(s) | Writer Splits | Publisher(s) | Publisher Splits | U.S. Copyright Registration No./Date |
|-------|-----------|---------------|--------------|------------------|--------------------------------------|

*[to be completed by Songwriter(s)]*

11/15/11                                                                  PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement
(Final2).doc

## ASSIGNMENT

## EXHIBIT A

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

_____

(References include paragraph 6.01)

KNOW ALL MEN BY THESE PRESENTS:

The undersigned:

Name:        JUAN ELIACIM MARTINEZ PIMENTEL

Address:     c/o Bradley Legal Group, P.A.
             15 Northeast 13th Avenue
             Ft. Lauderdale, Florida 33301
             Attn: John Bradley, Esq.
(jointly and severally, "Assignor")

for good and valuable consideration now received, hereby sells and assigns unto:

Name:        _____ (BMI)

Address:     c/o Bradley Legal Group, P.A.
             15 Northeast 13th Avenue
             Ft. Lauderdale, Florida 33301
             Attn: John Bradley, Esq.
("First Assignee"),

and its successors and assigns forever, one hundred percent (100%) of Assignor's interest in the copyright(s) (including renewals, if applicable) in and to, and all of the right, title and interest of the Assignor in and to, all musical compositions Assignor owns, in whole or part, or which Assignor at any time acquires, including without limitation, the musical composition(s) listed on Schedule A annexed (all such compositions collectively the "Compositions"), throughout the world, which First Assignee, in turn, for good and valuable consideration now received, hereby sells and assigns unto:

Name:        Sony/ATV Latin Music Publishing LLC

11/15/11                                          PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement
(Final2).doc

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
                     Document      Page 47 of 83

Address:     550 Madison Avenue
             New York, NY 10022-3211
             ("Second Assignee")

and its successors and assigns forever, an undivided fifty percent (50%) of Assignor's interest in the copyright(s) (including renewals, if applicable) in and to, and all of the right, title and interest of Assignor(s) in and to, the Composition(s), throughout the world.

THIS INSTRUMENT is subject to all of the terms and conditions of the Agreement dated as of December 15, 2011 between First Assignee and Second Assignee.

DATED:  as of December 15, 2011

_____
JUAN ELIACIM MARTINEZ PIMENTEL,
individually and d/b/a _____
(BMI)

30

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
                    Document      Page 48 of 83

## ACKNOWLEDGMENT

STATE OF _Florida_ )
               ) ss:
COUNTY OF _Miami-Dade_)

On _12 / 16 / 2011_, before me, the undersigned, personally appeared, JUAN ELIACIM MARTINEZ PIMENTEL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual executed the instrument.

Sworn to before me
this _16_ day of _December_

_____
Notary Public

Notary Public State of Florida
Blanca Del Mar Rivera
My Commission DD958576
Expires 02/04/2014

11/15/11                                             PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement (Final2).doc

## EXHIBIT B

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

---

(References include paragraph 6.01)

To:   ALL RECORD MANUFACTURERS     To:   BMI
        LICENSED TO MECHANICALLY
        REPRODUCE COMPOSITIONS      To:   HARRY FOX AGENCY
        SPECIFIED HEREINBELOW

To:   ALL OTHER PARTIES
        IN INTEREST

Please be advised that effective as of December 15, 2011, we have granted to Sony/ATV Latin Music Publishing LLC and its licensees and assigns the exclusive right, throughout the world, in respect of compositions of which the undersigned is the copyright proprietor, including those compositions listed on Schedule A annexed hereto (the "Compositions") to:

    (i)     license and cause others to license the use of the Compositions;

    (ii)    administer and grant rights in and to the Compositions and the copyrights therein;

    (iii)   publish and sell sheet music and/or folios of the Compositions if it so elects;

    (iv)   collect all monies payable with respect to the Compositions, including monies earned but not paid prior to the effective date hereof; and

    (v)    otherwise administer the Compositions and the copyrights therein and to act as the publishers thereof.

_____
JUAN ELIACIM MARTINEZ PIMENTEL,
individually and d/b/a

_____
(BMI)

32

## EXHIBIT C

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

(References include paragraph 6.01 and subparagraph 12.01(f))

11/15/11                                                    PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement
(Final2).doc

## **EXHIBIT D**

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

---

(Reference paragraph 13.08)

Date:

TO WHOM IT MAY CONCERN:

We are the writers of the composition[s]:

[TITLE OR LIST]

Our respective ownership interests in [it] [them], and our shares of the royalties payable with
respect to [it] [them], are stated below.

SIGNATURE/PRINTED NAME                          % SHARE

_____                    _____%

_____                    _____%

_____                    _____%

_____                    _____%

_____                    _____%

34

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document      Page 52 of 83

## EXHIBIT E

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

---

(References include paragraph 12.03)

11/15/11                                           PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement
(Final2).doc

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document       Page 53 of 83

## EXHIBIT F

to an agreement between JUAN ELIACIM MARTINEZ PIMENTEL, individually and d/b/a
_____ (BMI) and SONY/ATV LATIN MUSIC
PUBLISHING LLC (BMI), dated as of December 15, 2011.

---

(References include subparagraph 12.01(f))

Date: _____

To:     SONY/ATV LATIN MUSIC PUBLISHING LLC

Re:     _____ (BMI)

Please be advised that as of the date set forth above, we have made no advances which are
recoupable from public performance royalties payable to the above-referenced publisher
member(s).

Very truly yours,

BMI

By_____
            An Authorized Signatory

11/15/11                                                   PRK [SMPD 11-20(3)]
G:\SMP Business Affairs\PUBDOCS\Discos\Martinez, Juan Eliacim\Eliacim Martinez Co-Publishing Agreement
(Final2).doc

Form **W-8BEN**

(Rev. February 2006)

Department of the Treasury
Internal Revenue Service

## Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding

▶ Section references are to the Internal Revenue Code. ▶ See separate instructions.

▶ Give this form to the withholding agent or payer. Do not send to the IRS.

OMB No. 1545-1621

| Do not use this form for: | Instead, use Form: |
|---|---|
| • A U.S. citizen or other U.S. person, including a resident alien individual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | W-9 |
| • A person claiming that income is effectively connected with the conduct of a trade or business in the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | W-8ECI |
| • A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) . . . . . . | W-8ECI or W-8IMY |
| • A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) . . . . . . . . | W-8ECI or W-8EXP |

Note: *These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding.*

| | |
|---|---|
| • A person acting as an intermediary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | W-8IMY |

Note: *See instructions for additional exceptions.*

### Part I · Identification of Beneficial Owner (See instructions.)

1  Name of individual or organization that is the beneficial owner

Juan Eliacim Martinez Pimente

2  Country of incorporation or organization

3  Type of beneficial owner:   ☒ Individual   ☐ Corporation   ☐ Disregarded entity   ☐ Partnership   ☐ Simple trust
☐ Grantor trust   ☐ Complex trust   ☐ Estate   ☐ Government   ☐ International organization
☐ Central bank of issue   ☐ Tax-exempt organization   ☐ Private foundation

4  Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address.

1500 Bay RD, APt 2265, Miami Beach 33139

City or town, state or province. Include postal code where appropriate.

Miami, FL

Country (do not abbreviate)

United States

5  Mailing address (if different from above)

City or town, state or province. Include postal code where appropriate.

Country (do not abbreviate)

6  U.S. taxpayer identification number, if required (see instructions)
☐ SSN or ITIN   ☐ EIN

7  Foreign tax identifying number, if any (optional)

8  Reference number(s) (see instructions)

### Part II · Claim of Tax Treaty Benefits (if applicable)

9  I certify that (check all that apply):

a  ☒ The beneficial owner is a resident of Domn. REP. within the meaning of the income tax treaty between the United States and that country.

b  ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).

c  ☐ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).

d  ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).

e  ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

10  Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article ............... of the treaty identified on line 9a above to claim a ............... % rate of withholding on (specify type of income): ............................... .

Explain the reasons the beneficial owner meets the terms of the treaty article: ................................................................
........................................................................................................................................

### Part III · Notional Principal Contracts

11  ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is **not** effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

### Part IV · Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

1 I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates,

2 The beneficial owner is not a U.S. person,

3 The income to which this form relates is (a) not effectively connected with the conduct of a trade or business in the United States, (b) effectively connected but is not subject to tax under an income tax treaty, or (c) the partner's share of a partnership's effectively connected income, **and**

4 For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

**Sign Here** ▶

Signature of beneficial owner (or individual authorized to sign for beneficial owner)

12-22-12
Date (MM-DD-YYYY)

Self
Capacity in which acting

For Paperwork Reduction Act Notice, see separate instructions.        Cat. No. 25047Z        Form **W-8BEN** (Rev. 2-2006)

EXHIBIT "B"

**** FILED: BROWARD COUNTY. FL  Howard C. Forman. CLERK 1/27/2015 11:07:49 AM.****

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

BRADLEY LEGAL GROUP, P.A.                    CASE NO. 14-021042 CACE
a Florida Professional Assn,

               Plaintiff,

vs.

JUAN ELIACIM MARTINEZ,

               Defendant.

_____/

## DEFAULT FINAL JUDGMENT

**THIS CAUSE** having come before the Court on Plaintiff's Motion for Entry of Default

Final Judgment, and the Court having considered the pleadings and being otherwise fully advised

in the premises, it is

**ADJUDGED** that Default Final Judgment is hereby entered in favor of the Plaintiff,

BRADLEY LEGAL GROUP, P.A., and against the Defendant, JUAN ELIACIM MARTINEZ

for the principal amount of $24,500.00, plus its costs of $713.03 (filing fees $413.03, service of

process fees $300.00), for a total judgment of $25,213.03, for all of which let execution issue

forthwith; and

**DONE and ORDERED** at Broward County, Florida, this 27 day of Jan,

2015.

CIRCUIT JUDGE

cc: Bradley Legal Group, P.A.
    Juan Eliacim Martinez/Defendant

1

EXHIBIT "C"

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

BRADLEY LEGAL GROUP, P.A.
a Florida professional association,

CASE NO. 14-021042 CACE

Plaintiff,

vs.

JUAN ELIACIM MARTINEZ,

Defendant.

_____/

## ORDER AND NOTICE TO APPEAR

THIS CAUSE having come before the Court upon Plaintiff's Motion for Proceedings
Supplementary and the supporting Affidavit of John F. Bradley, and the Court being fully
advised in the premises, it is ORDERED AND ADJUDGED as follows:

Plaintiff/Judgment Creditor, BRADLEY LEGAL GROUP, P.A.'s Motion for
Proceedings Supplementary pursuant to Fla. Stat. § 56.29 is hereby GRANTED. Pursuant to §
56.29, Fla. Stat., the Plaintiff is entitled to Proceedings Supplementary, and an Order from this
Court compelling a transfer of the ownership and title of Defendant's certain assets to Plaintiff
by operation of law, namely, registered and unregistered copyrights, along with the inventory
and goodwill associated therewith, authored by the Defendant.

Defendant/Judgment Debtor, JUAN ELIACIM MARTINEZ ("Defendant") and third
parties Universal Musica Unica Publishing and Julca Brothers Publishing ("Third Parties") shall
file an affidavit, as provided in § 56.16, Fla. Stat., with the Court by
$\underline{\text{Jan 24, 2017}}$, stating why the following intellectual property, along with the
inventory and goodwill associated therewith, authored by Defendant, could not be applied to
satisfy the unsatisfied Default Final Judgment in this cause:

1

*Bradley Legal Group, P.A., 15 Northeast 13ᵗʰ Avenue, Fort Lauderdale, FL 33301 (954) 523-6160*

a) U.S. Copyright Registration No. PA0001831397 dated March 7, 2013 for the music work

   titled "Desde Que Se Fue" ("Copyright Registration"); and

b) Copyrights which appear to be unregistered ("Unregistered Copyrights"):

   i.   Album: EliaCiM (released on August 19, 2016):
        1. Mi Pecado Favorito
        2. Fingiendo Sonrisas
        3. Cancioncita Cursi De Amor
        4. Un Dia De Esos
        5. Contradiccion
        6. El Espacio
        7. Quiero
        8. ParaPaPaPa!
        9. Luces
        10. Te Quiero Lejos De Aqui
        11. Millas
        12. La Bella
   ii.  Single: Se Le Acabaron Las Flechas A Cupido (released on August 12, 2016)
   iii. Single: Quiero (Version Bachata) (released on October 21, 2016)

   A responding affidavit must raise any fact or defense opposing application of the Copyright Registration and Unregistered Copyrights to satisfy the judgment, including legal defenses. Legal defenses need not be filed under oath but must be served contemporaneously with the affidavit.

   Pursuant to § 56.29(2), Fla. Stat., discovery as provided under the rules of civil procedure is available. There is a right to a jury trial as provided in s. 56.18.

   The Defendant shall appear before this Court on February 6, 2017 @ 8:30 AM, to be examined concerning Defendant's assets.

   Pursuant to § 56.29(8), Fla. Stat., Plaintiff is entitled to its costs for these Proceedings Supplementary, and other reasonable and just incidental costs. This Court shall reserve jurisdiction to determine the amount thereof, upon proper motion.

2

Pursuant to § 56.29(8) and § 57.115, Fla. Stat., Plaintiff is entitled to its reasonable attorneys' fees against Defendant for these Proceedings Supplementary. This Court shall reserve jurisdiction to determine the amount thereof, upon proper motion.

This Notice to Appear must be served on Defendant and Third Parties as provided for in chapter 48.

Dated this _____ day of _____, 2016, in Chambers, Ft. Lauderdale, Florida.

_____
Circuit Court Judge CAROL-LISA PHILLIPS

JAN 0 9 2017

A TRUE COPY

**_Copies furnished to:_**
John F. Bradley, Esq. (via email)
Defendant JUAN ELIACIM MARTINEZ (pursuant to chapter 48)
Universal Musica Unica Publishing (pursuant to chapter 48)
Julca Brothers Publishing (pursuant to chapter 48)

3

Case 3:17-bk-00752   Doc 13   Filed 05/08/17   Entered 05/08/17 13:41:56   Desc Main
Document      Page 61 of 83

EXHIBIT "D"

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

BRADLEY LEGAL GROUP, P.A.
a Florida professional assn.,

      CASE NO. 14-021042 CACE

     Plaintiff,

vs.

JUAN ELIACIM MARTINEZ,

     Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS

**THIS CAUSE** having come on Plaintiff's Motion for Sanctions, and the Court having heard argument of counsel, and being otherwise advised in the premises, it is hereupon,

    **ORDERED AND ADJUDGED** that:

    Plaintiff's Motion for Sanctions is hereby **GRANTED**. The defaulted Defendant has completely failed to comply with this Court's Order on Plaintiff's Ex-Parte Motion to Compel Discovery Responses within ten (10) days as ordered by this Court. The Court finds that the failure was not substantially justified, and that other circumstances would not make an award of expenses unjust. Defendant has not showed that his failure was substantially justified or that other circumstances exist.

    **FURTHER ORDERED AND ADJUDGED** that Defendant is hereby ordered to pay Plaintiff's reasonable expenses caused by the failure, including attorneys' fees, pursuant to Fla. R. Civ. P. 1.380(b)(2), upon Plaintiff's motion to determine reasonable fees and costs.

    **DONE AND ORDERED** this ____ day of November, 2016.

CAROL-LISA PHILLIPS

JAN 1 0 2017

A TRUE COPY

1

*Bradley Legal Group, P.A., 15 Northeast 13th Avenue, Fort Lauderdale, FL 33301 (954) 523-6160*

CAROL-LISA PHILLIPS
CIRCUIT COURT JUDGE

**Copies furnished to:**

John F. Bradley, Esq. (jb@bradlegal.com)

Defendant JUAN ELIACIM MARTINEZ (5305 Biscayne Blvd., Suite 103, Miami, FL 33137; 164 NW 20 Street, #204, Miami, FL 33126; eliacim@beautifulcinco.com, eliacimmartinez@gmail.com, zamoraangel@comcast.net, and inimitablent@gmail.com).

*Bradley Legal Group, P.A., 15 Northeast 13th Avenue, Fort Lauderdale, FL 33301 (954) 523-6160*

EXHIBIT "E"





## Songs by EliaCiM

Music › Latino › EliaCiM

| | NAME | ARTIST | ALBUM | TIME | POPULARITY | PRICE |
|---|---|---|---|---|---|---|
| 1 | ¿Qué Voy A Hacer Conmigo? | EliaCiM | ¿Qué Voy A Hacer Conmigo? - Single | 3:50 | | $1.29 |
| 2 | Quiero (Version Bachata) | EliaCiM | Quiero (Version Bachata) - Single | 4:05 | | $1.29 |
| 3 | La Bella | EliaCiM | EliaCiM | 4:57 | | $1.29 |
| 4 | Se Le Acabaron Las Flechas A Cupido | EliaCiM | Se Le Acabaron Las Flechas A Cupido - Single | 3:46 | | $1.29 |
| 5 | Millas | EliaCiM | EliaCiM | 3:43 | | $1.29 |
| 6 | Un Día De Esos | EliaCiM | EliaCiM | 3:47 | | $1.29 |
| 7 | Mi Pecado Favorito | EliaCiM | EliaCiM | 4:31 | | $1.29 |
| 8 | Quiero | EliaCiM | EliaCiM | 4:08 | | $1.29 |
| 9 | Luces | EliaCiM | EliaCiM | 3:58 | | $1.29 |
| 10 | El Espacio | EliaCiM | EliaCiM | 3:27 | | $1.29 |
| 11 | Fingiendo Sonrisas | EliaCiM | EliaCiM | 4:13 | | $1.29 |
| 12 | Contradicción | EliaCiM | EliaCiM | 4:09 | | $1.29 |
| 13 | El Espacio | EliaCiM | Cancioncitas De Amor, Vol. 2 | 3:27 | | $1.29 |
| 14 | Quiero (Version Bachata) | EliaCiM | Cancioncitas De Amor, Vol. 2 | 4:05 | | $1.29 |
| 15 | ParaPaPaPa! | EliaCiM | EliaCiM | 4:08 | | $1.29 |
| 16 | Te Quiero Lejos De Aquí | EliaCiM | EliaCiM | 4:02 | | $1.29 |
| 17 | Cancioncita Cursi De Amor | EliaCiM | EliaCiM | 3:45 | | $1.29 |

TOTAL: 17 ITEMS



Digital Music ⌄ | Eliacim

Departments ⌄    Browsing History ⌄    joanna's Amazon.com

EN    Hello, joanna   Account & Lists ⌄   Orders   Prime ⌄    0 Cart

music

Amazon Music Unlimited    Prime Music    CDs & Vinyl ⌄    Download Store ⌄    Open Web Player    MP3 cart ⌄   S

**Show results for**

Category
Albums
Songs

New Releases
Last 90 days (4)

Any Department
**Digital Music**
  International (40)
  Latin Music (40)
  Pop (3)

Shop for "Eliacim" in our
Amazon CD Store (1)

**Digital Music : "Eliacim"**

## Albums

| EliaCiM | EliaCiM | ¿Qué Voy A Hacer Conmigo? | Quiero (Version Bachata) | Se Le Acabaron Las Flechas A Cupido |
|---|---|---|---|---|
| by Eliacim | by Eliacim | by Eliacim | by Eliacim | by Eliacim |
| $14.49 | $9.49 | $1.29 | $1.29 | $1.29 |

See more Albums

Songs    Showing 32 Results                Sort by | Relevance

| Song Title | Artist | Album | Time | |
|---|---|---|---|---|
| ¿Qué Voy A Hacer Conmigo? | Eliacim | ¿Qué Voy A Hacer Conmigo? | 3:50 | $1.29 |
| La Bella | Eliacim | EliaCiM | 4:57 | $1.29 |
| ParaPaPaPa! | Eliacim | EliaCiM | 4:08 | $1.29 |
| El Espacio | Eliacim | EliaCiM | 3:27 | $1.29 |
| Se Le Acabaron Las Flechas A Cupido | Eliacim | Se Le Acabaron Las Flechas A Cupido | 3:47 | $1.29 |
| Contradiccion | Eliacim | EliaCiM | 4:09 | $1.29 |
| Luces | Eliacim | EliaCiM | 3:58 | $1.29 |
| Fingiendo Sonrisas | Eliacim | EliaCiM | 4:13 | $1.29 |
| Millas | Eliacim | EliaCiM | 3:43 | $1.29 |
| Cancioncita Cursi De Amor | Eliacim | EliaCiM | 3:45 | $1.29 |
| Quiero (Version Bachata) | Eliacim | Quiero (Version Bachata) | 4:05 | $1.29 |
| Un Dia De Esos | Eliacim | EliaCiM | 3:47 | $1.29 |
| Te Quiero Lejos De Aqui | Eliacim | EliaCiM | 4:02 | $1.29 |

| | | | | |
|---|---|---|---|---|
| Quiero | Eliacim | EliaCiM | 4:08 | $1.29 |
| Mi Pecado Favorito | Eliacim | EliaCiM | 4:31 | $1.29 |
| ¿Qué Voy A Hacer Conmigo? | Eliacim | ¿Qué Voy A Hacer Conmigo? | 3:50 | $0.99 |
| Quiero (Version Bachata) | Eliacim | Cancioncitas De Amor, Vol. 2 | 4:05 | $0.99 |
| El Espacio | Eliacim | Cancioncitas De Amor, Vol. 2 | 3:27 | $0.99 |
| Quiero (Version Bachata) | Eliacim | Quiero (Version Bachata) | 4:05 | $0.99 |
| La Bella | Eliacim | EliaCiM | 4:57 | $0.99 |
| Un Dia De Esos | Eliacim | EliaCiM | 3:47 | $0.99 |
| El Espacio | Eliacim | EliaCiM | 3:27 | $0.99 |
| Fingiendo Sonrisas | Eliacim | EliaCiM | 4:13 | $0.99 |
| Luces | Eliacim | EliaCiM | 3:58 | $0.99 |
| Millas | Eliacim | EliaCiM | 3:43 | $0.99 |
| ParaPaPaPa! | Eliacim | EliaCiM | 4:08 | $0.99 |
| Quiero | Eliacim | EliaCiM | 4:08 | $0.99 |
| Cancioncita Cursi De Amor | Eliacim | EliaCiM | 3:45 | $0.99 |
| Contradiccion | Eliacim | EliaCiM | 4:09 | $0.99 |
| Se Le Acabaron Las Flechas A Cupido | Eliacim | Se Le Acabaron Las Flechas A Cupido | 3:47 | $0.99 |
| Mi Pecado Favorito | Eliacim | EliaCiM | 4:31 | $0.99 |
| Te Quiero Lejos De Aqui | Eliacim | EliaCiM | 4:02 | $0.99 |

Shop for "Eliacim" in our Amazon CD Store (1)

### Search Feedback

Did you find what you were looking for?

Yes   No

If you need help or have a question for Customer Service, please visit the Help Section.




EliaCiM Official

Home   Videos   Playlists   Channels   About

Uploads ▾                                         Date added (newest) ▾   Grid ▾


EliaCiM - Que Voy A Hacer Conmigo [Official Audio]
4,634 views • 1 month ago


EliaCiM - Que Voy A Hacer Conmigo [Behind The Scenes]
286 views • 1 month ago


EliaCiM - Que Voy A Hacer Conmigo (Teaser #1)
491 views • 1 month ago


EliaCiM - Quiero (Versión Bachata) [Lyric Video]
2,614 views • 5 months ago


EliaCiM - Se Le Acabaron Las Flechas A Cupido [Lyric Video]
2,627 views • 5 months ago


EliaCiM - Quiero (Bachata Versión) @Concierto en
865 views • 5 months ago


EliaCiM - Canción sin nombre 2
3,804 views • 2 years ago


EliaCiM - Untitled 1 at Rockaway!
1,515 views • 2 years ago


EliaCiM - Entrevista en Acceso Total NYC
1,505 views • 2 years ago


EliaCiM - La Bella [Official Video]
6,555 views • 2 years ago


EliaCiM - Quiero (Versión Bachata) [Official Audio]
264,909 views • 2 years ago


EliaCiM - La Bella [Official Audio]
45,827 views • 3 years ago


EliaCiM - Mirtas [Official Audio]
79,978 views • 3 years ago


EliaCiM - Te Quiero Lejos De Aquí [Official Audio]
25,852 views • 3 years ago


EliaCiM - Lupes [Official Audio]
75,027 views • 3 years ago


EliaCiM - PasaPaPaPa [Official Audio]
30,272 views • 3 years ago


EliaCiM - Quiero [Official Audio]
125,461 views • 3 years ago


EliaCiM - El Espacio [Official Audio]
28,893 views • 3 years ago


EliaCiM - Contradicción [Official Audio]
71,273 views • 3 years ago


EliaCiM - Un Día De Esos [Official Audio]
8,277 views • 3 years ago


EliaCiM - Cancioncita Cursi De Amor [Official Audio]
39,589 views • 3 years ago


EliaCiM - Fingiendo Sonrisas [Official Audio]
59,896 views • 3 years ago


EliaCiM - Mi Pecado Favorito [Official Audio]
71,786 views • 3 years ago


EliaCiM En Concierto 2 De Agosto Auditorio Juan Bosch [t...
926 views • 3 years ago


EliaCiM En Concierto 2 De Agosto Auditorio Juan Bosch
1,254 views • 3 years ago


EliaCiM - Oxtero [Live]
41,620 views • 4 years ago


EliaCiM - Un Día De Esos [Official Video]
235,285 views • 4 years ago

 **Eliacim Martinez**
December 7, 2016 · Instagram · 🌐

Familia de Nueva York! Los veo más pronto de lo que esperaba! 🤍🙏🏼 Mañana nos vemos en @corchowine 9PM

New York family! See you sooner than I expected! 🤍🙏🏼 see you tomorrow at @Corchowine 9 PM

⚙ · Rate this translation



👍 Like    💬 Comment    ➤ Share

👍👍 12

 **Arsalan Usmani** Go brother go! So good to see you excel.
Like · Reply · December 8, 2016 at 2:57pm

 Write a comment...      

 **Eliacim Martinez** updated his profile picture.
November 22, 2016 · 🌐

🖼 : Josue Paniagua

See Translation



Eliacim Martinez

 Like    💬 Comment    ➤ Share

EXHIBIT "F"

 **Eliacim Martinez**
February 15 · Instagram · 🌐

Marzo 15 #QueVoyHacerConmigo

See Translation



## Instagram post by EliaCiM • Feb 16, 2017 at 2:54am UTC

See this Instagram post by @eliacimofficial • 8 likes

WWW.INSTAGRAM.COM

394 Views

 Like　　 Comment　　➤ Share

🔵🔵 58

**EXHIBIT "G"**











EXHIBIT "H"

From: **John F. Bradley** jb@bradlegal.com
Subject: Re: Juan Eliacim Martinez
Date: February 5, 2017 at 3:48 PM
To: Jon Long jlong@tennessee-bankruptcy.com, Joanna Lubczanska joanna@bradlegal.com, Betty Rinaldi betty@bradlegal.com



Receipt acknowledged. Kindly
File your suggestion of
Bankruptcy in the state court action.

## John F. Bradley
BRADLEY LEGAL GROUP, P.A.
15 Northeast 13th Ave.
Fort Lauderdale, FL 33301
www.bradlegal.com
954 523-6160

On Feb 5, 2017, at 3:34 PM, Jon Long <jlong@tennessee-bankruptcy.com> wrote:

> Mr. Bradley,
>
> I represent Mr. Martinez in a Chapter 7 bankruptcy filed on 2/5/17. Attached you will find a copy of the notice of filing.
>
> Thanks,
>
> Jon D. Long
> Attorney at Law
> Long, Burnett, and Johnson, PLLC
>
> Nashville Location
> 302 42nd Av N
> Nashville, TN 37209
>
> Mt. Juliet Location
> 15065 Lebanon Road, Suite 205
> Old Hickory, TN 37138
>
> T: (615)386-0075
> F: (615)864-8419
>
> www.tennessee-bankruptcy.com
>
> *We are a debt relief agency. We help people file for bankruptcy relief under the Federal Bankruptcy Code. This e-mail and any attachments thereto, are intended for use by the addressee(s) named herein and may contain legally privileged information. If you are not the intended recipient of this e-mail you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify me immediately by telephone or return e-mail and permanently delete the original and any copy of this e-mail and destroy any printout of it. Nothing in this e-mail should be construed as legal advice and is general in nature unless Long, Burnett and Johnson represent you as your attorney. Long, Burnett, and Johnson, PLLC is not your attorney unless we have executed an agreement of representation*
>
> <credletch7 John Bradley.pdf>